**SOUTHLAND MILLING CO., Plaintiff,**

v.

**VEGE FAT, INC., Defendant.**

**Civ. No. 65-39.**

United States District Court

E. D. Illinois.

Dec. 8, 1965.

Brady, Donovan & Hatch, East St. Louis, Ill., and R. Wilson Smith, Jr., Gainesville, Ga., for plaintiff.

W. Thomas Coghill, Jr., of Pope & Driemeyer, East St. Louis, Ill., for defendant.

JUERGENS, Chief Judge.

Plaintiff Southland Milling Co. brings this action to recover damages from defendant, allegedly caused by defendant's supplying contaminated and toxic liquid vegetable fat which was fed to poultry and resulted in cessation of egg production and ultimately caused the poultry to become sickly and die.

Jurisdiction is founded on diversity of citizenship. Plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Georgia with its principal place of business in that state. The defendant is an Illinois corporation and has its principal place of business in Illinois. The amount in controversy fairly exceeds the sum of $10,-000, exclusive of interest and costs.

On March 19, 1965, plaintiff filed its complaint and subsequently, pursuant to leave of Court, filed its amendment on June 8, 1965. The complaint and amendment, after first setting out jurisdictional requirements, allege that on or about March 18, 1961 plaintiff purchased and received delivery from Whitmoyer Laboratories of Dixie, Inc. (hereinafter referred to as "Whitmoyer"), in Gainesville, Georgia, a railroad tank carload of liquid vegetable fat produced by defendant at Dupo, St. Clair County, Illinois, which product was used in the preparation of poultry feed; that plaintiff mixed the liquid vegetable fat with other products and sold the mixed feed to Dixieland Hatchery, Inc., which subsequently fed the poultry feed to their broilers and to their hens; that the liquid vegetable fat produced by defendant was contaminated and toxic, causing the poultry to cease egg production and become sickly and die; that Dixieland Hatchery, Inc., for valuable consideration has assigned their cause of action against defendant to plaintiff; that defendant knew the liquid vegetable fat was to be used in the preparation of feed for poultry; that the liquid vegetable fat was in the same adulterated, contaminated and toxic condition when it was shipped by defendant to Whitmoyer; that plaintiff did not discover that the liquid fat was adulterated,

contaminated and toxic or that it was injuring poultry to which it was fed until on or after April 1, 1961, and immediately upon ascertaining and discovering the defective material it notified Whitmoyer and Whitmoyer immediately notified defendant from whom it had purchased the contaminated product; that the adulterated, contaminated and toxic condition of the product was not and could not have been discovered by plaintiff in the exercise of ordinary care and diligence prior to its use by plaintiff and no negligence or lack of ordinary care and diligence on the part of plaintiff or Dixieland Hatcheries, Inc., proximately caused or contributed to the injury or damage; that the liquid vegetable fat manufactured by defendant and sold by it to Whitmoyer and by them to the plaintiff was not merchantable or reasonably suited to the use intended, which fact was not disclosed by defendant to plaintiff or to Whitmoyer.

Defendant Vege Fat, Inc., has filed its motion to dismiss the plaintiff's complaint, as amended, for the reason that the complaint, as amended, fails to state a claim upon which relief can be granted.

Defendant argues (1) that plaintiff's cause of action is barred by Chapter 26, Section 2–725, Illinois Revised Statutes, 1963; (2) that plaintiff fails to allege freedom from contributory negligence; (3) that there is no privity of contract between plaintiff and defendant; (4) that the complaint fails to allege that notice was given defendant of the breach of any promise or warranty within a reasonable time after such breach should have been known; and (5) that plaintiff's complaint fails to allege that defendant's product was contaminated and toxic at the moment the product left defendant's possession but shows that defendant's product was tampered with after it left defendant's possession.

■ With respect to the matters raised by points (2), (4) and (5) of the defendant's motion, the complaint, as amended, belies defendant's assertions. As amended, the complaint alleges that plaintiff and Dixieland Hatchery are free from negligence or lack of ordinary care. The complaint, as amended, further alleges that immediately upon ascertaining and discovering the condition of the product plaintiff notified Whitmoyer, who in turn notified the defendant. The complaint further alleges that the product was in the same condition when shipped by defendant.

■ With respect to defendant's point (1) above, wherein it relies on Chapter 26, Section 2–725, namely, the statute of limitations, in contracts for sale it must be noted that the statute of limitations referred to specifically negates its application to causes of action which have accrued before the act became effective, namely, prior to July 2, 1962.

There yet remains to be considered defendant's defense based on lack of privity of contract between plaintiff and defendant. It becomes necessary first to determine whether the law of the State of Illinois, the point from which the product was shipped, is controlling or whether the law of the State of Georgia shall apply, Georgia being the place at which the damage occurred.

■ In determining which law should apply, the Court will consider all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact. Bowles v. Zimmer Manufacturing Company, 277 F.2d 868 (7th Cir., 1960).

The facts currently before the Court as they appear in the complaint, as amended, show that both the States of Illinois and Georgia are concerned with the transaction.

■ The application of the law of the State of Georgia would readily dispose of the matter of lack of privity. A manufacturer or processor of animal food is under a duty to use due care and is liable if his negligence results in injury or death of the animals to whom the food is fed, and such duty and liability are not limited by a requirement of privity of contract. 36A C.J.S. Food § 64, p. 916

(citing Burns v. Ralston, 210 Ga. 82, 77 S.E.2d 739).

From the complaint it is difficult to ascertain which state law should apply.

Since the Court does not at this point of the proceedings have all of the facts sufficient to determine which of the two states involved is most closely associated with the transaction, it will reserve ruling as to the state law applicable until the facts are developed more fully.

Since the factual allegations at the present state of this action indicate that the transaction is most closely associated with the State of Illinois as concerns the liability of defendant, the Court will examine the law of the State of Illinois to determine whether or not lack of privity of contract between plaintiff and defendant is crucial.

As a general rule, in order that one may be held liable on a warranty, it must be either his contract or that of his authorized agent, or he must have ratified a contract of warranty, in a contract of sale wherein he is the seller. Ordinarily a warranty is addressed to some particular person, generally the buyer, who alone can avail himself thereof, and the general rule is that, in order to recover for breach of warranty, privity of contract is required between the warrantor and the person seeking recovery, although it is not of necessity confined to the person to whom the title is transferred. With respect to foodstuffs and like goods designed for human consumption, the requirement of privity of contract is not controlling. One purchasing food which is deleterious has a remedy against either the person from whom the food was last purchased or against a prior seller, and where an article of food or drink is sold in a sealed container for human consumption, public policy demands that the warranty of wholesomeness and fitness for human consumption run with the sale of the article for the benefit of the consumer thereof notwithstanding the absence of privity of contract between the ultimate consumer and the manufacturer, packager or processor.

32 I.L.P. Sales § 132, pp. 445, 446. Sharpe v. Danville Coca-Cola Bottling Co., 9 Ill.App.2d 175, 132 N.E.2d 442. Patargias v. Coca-Cola Bottling Co., 332 Ill.App. 117, 74 N.E.2d 162.

Although it has been stated as a general rule that there is no liability on the part of a negligent manufacturer to a remote vendee of its product because of lack of privity, the trend has been to abandon the rule and, in proper cases, place liability on the wrongdoing manufacturer where it belongs. In such cases liability arises not out of the contract or direct privity between the wrongdoer and the injured person, but out of a duty which the law imposes. It extends to any person who might reasonably be expected to suffer injury therefrom.

The Illinois courts appear to follow the reasoning applied by the New York court in MacPherson v. Buick Motor Company, 217 N.Y. 382, 111 N.E. 1050. In Rotche v. Buick Motor Company, 358 Ill. 507, 193 N.E. 529, and in Lindroth v. Walgreen Co. and Knapp-Monarch Co., 329 Ill.App. 105, 67 N.E.2d 595, it was held that where the product is inherently dangerous a cause of action by the sub-purchaser against the manufacturer exists in the absence of privity.

Today's manufacturer, selling to distributors or wholesalers, is still interested in the subsequent sales of the product. His advertising is not aimed at his distributors. The historical relative equality of seller and buyer no longer exists. A product that is inherently dangerous or defectively made constitutes an exception to the requirement of privity in an action between the user of the product and its manufacturer. Suvada v. White Motor Company, 51 Ill.App.2d 318, 201 N.E.2d 313 (First Dist., Second Div., 1964).

In Suvada the Court cited Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1, which held that a sub-purchaser is entitled to recover from a manufacturer of an automobile that is inherently dangerous or defectively manufactured in the absence

of privity. The Court said that it could find no distinction between an unwholesome food case and a defective car and also cited B. F. Goodrich Co. v. Hammond, 269 F.2d 501 (10th Cir.), which held that a sub-purchaser and his wife had a cause of action against the manufacturer based upon breach of warranty in manufacturing a defective tire and stated: "(P)rivity is not essential where an implied warranty is imposed by the law on the basis of public policy."

■ The courts of the State of Illinois have considered the necessity of privity in a number of situations and have consistently held that there is no privity requirement where the sale of unwholesome food is involved. Likewise, the Illinois courts have held that there is no requirement of privity in cases where a manufacturer has placed into the stream of commerce a product that becomes dangerous to life and limb when defectively manufactured.

The Court has been unable to find any case in which the Illinois courts have been called upon to determine the privity requirement in cases of sales of food for consumption by animals where the food is adulterated, contaminated and toxic as alleged in the complaint, nor has such a case been cited by the parties.

The general rule in the United States that privity of contract is indispensable in a suit for breach of implied warranty was formulated at a time when public policy favored the protection of industry which in its infancy and early growth was unable to adequately protect itself; however, as industry matured, it outgrew this need for protection and today the policy of protection of industry is being replaced by a policy that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them and be treated as a cost of the product against which insurance protection can be obtained. The consumer of such product is entitled to maximum protection and the proper persons to afford such protection are those who market the product. The public of today is entitled to protection from haphazard industrial operations. Industry has available to it vast scientific and technological information by the use of which it may and should market products fit for the purpose intended. Industry is no longer a "small area" businessman with limited resources but in general conducts "world wide" business both in manufacturing operations and advertising. The latter frequently goes beyond the "puffing" limits, and this advertising is directed at the ultimate consumer and tends to lure the general public into a sense of well-being and dependency upon industry and its assertions. The ultimate consumer is entitled to protection afforded by science, and industry should not be entitled to hide behind the cry of "lack of privity" when it wrongfully causes damage to the ultimate purchaser.

The Illinois cases have generally waived the privity requirement only in those instances where personal injuries have occurred, such as in the sales of defectively manufactured items which become inherently dangerous to life and limb when defectively manufactured and in sales of products for human consumption. However, there appears to be no compelling reason why a manufacturer should not likewise be held liable for breach of warranty to an ultimate consumer, privity notwithstanding, where the manufacturer wrongfully places in commerce food for consumption by animals when it knows that the product is to be so used and notwithstanding this knowledge sells products which are not fit for the purpose for which they are intended and which when so used cause damage to the ultimate user.

■ Under the allegations of the complaint as laid, the Court finds that a cause of action is stated, lack of privity notwithstanding.

It is, therefore, the order of this Court that the defendant's motion to dismiss be and the same is hereby denied.