## Anna Sloan, Appellee, v. F. W. Woolworth Company, Appellant.

1.   SALES, § 254*—*when retailer impliedly warrants wholesomeness of food.* There is an implied warranty of the wholesomeness of canned goods sold by a retailer for immediate consumption.

2.   SALES, § 254*—*when retailer answerable for injuries due to unwholesome food.* A retailer of canned goods is answerable on an implied warranty to a purchaser who, in the exercise of due care for her health, sustains damages from eating impure fish.

3.   ACTION, § 12*—*when action lies for breach of statute.* A civil action lies for injuries caused by a violation of a public policy statute, although a right of action is not created in express terms.

4.   SALES, § 282*—*when evidence shows due care in eating canned food.* In an action against a retailer for injuries arising from the breach of an implied warranty of the wholesomeness of canned fish, want of due care on the part of the purchaser is not shown by the fact that she took several bites of the fish after noticing that it was tasteless, and that the tomato sauce in which it came was not the right color.

5.   SALES, § 283*—*when due care in eating unwholesome food question for jury.* Whether the purchaser exercised due care for her health in eating unwholesome canned fish is a question for the jury, in an action against a retailer for the breach of an implied warranty of fitness, where she took but three or four bites after finding the fish tasteless, and noticing that the tomato sauce in which it came was not of the right color.

6.   SALES, § 282*—*admission of evidence in action for injury from unwholesome food.* The question whether a retailer undertook to supply the necessary skill in selecting canned goods for customers is immaterial in an action for injuries caused by the breach of an implied warranty of the wholesomeness of canned food, since it was his duty to use the skill necessary to supply wholesome goods.

7.   DAMAGES, § 24*—*sufficiency of evidence of loss of time and*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*earnings.* Evidence that a woman earned from eighty to one hundred dollars in commissions by canvassing just prior to an injury, and that she had not been able to earn anything since, *held* sufficient proof of the loss of time and earnings to take the question to the jury.

Appeal from the Circuit Court of Macon county; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed April 16, 1915.

BROWN, BROWN & BROWN, for appellant.

LE FORGEE, VAIL & MILLER, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Appellee recovered a judgment against appellant for $500 in an action on the case for damages averred to have been sustained by her from eating part of the contents of a can of herring sold to appellee by appellant.

The declaration contains seven counts. Each count avers that appellant owned and operated a retail store in the city of Decatur, at which store appellant sold to the public at retail, divers articles of merchandise, among which were canned articles of food. The first count pleads the statute of Illinois, which makes it unlawful for any person or corporation to sell any flesh of any diseased animal or other corrupt or unwholesome provision and avers that the appellant, not regarding its duty in that behalf sold to the appellee a tin of herring, which was corrupt and unwholesome and the flesh thereof diseased, of which fact the appellee was ignorant and in the exercise of due care for her own safety would not have known, and that appellee on the same day ate the said herring and by reason of its unwholesome and corrupt condition became poisoned and diseased, etc.

The second count avers the provision of section 6 of

the Pure Food Act of 1907 (J. & A. ¶ 10745), which makes it an offense for a retail dealer to have in his possession any article of food which is misbranded or adulterated and of section 8 (J. & A. ¶ 10747), which provides that any article of food shall be deemed adulterated which consists in whole or in part of decomposed, infected, tainted or rotten animal or vegetable substance, and avers that the can of herring sold to appellee was adulterated in that its contents consisted in part of decomposed, infected and tainted substance. The third and fourth counts aver the same provisions of the statute as the second and that the can of herring was branded "fresh fat herrings in tomatoes," whereas said herring were not fresh but were decomposed and tainted.

The fifth and sixth counts aver that appellant falsely warranted the herring to be good, sound, healthy and fit for food. The seventh avers that appellant negligently sold appellee herring which was tainted, corrupt and poisonous. The plea is the general issue.

The evidence shows that on October 29, 1913, appellant was conducting a five and ten cent store in Decatur and on that day had a special sale of canned goods among which were "Nord Star" herring. The herring, in sealed cans labeled "Nord Star Brand, Fresh Fat Herrings in Tomatoes, Strohmery and Art Company, N. Y., net contents five oz. Packed at Stavanger Norway," were lying on a counter wrapped in wax paper. Appellant picked up a can, removed the paper, examined it, saw no defects in it and paid ten cents for it. At her home she opened the can, placed the contents on a china platter and served it for supper that night. The dishes, knives and forks were clean. Appellee testified that she ate four or five bites of the herring, said it was spoiled and ate nothing else for supper; that she noticed that the sauce looked brown; that the herring was tasteless; that they fell apart when she put them

on the platter and that she thought she had shaken them too hard to get them out of the can. Immediately after partaking of the herring, she became sick at her stomach and was unable to eat anything more and continued in that condition through the night, becoming worse the next day. Both her husband and daughter were made sick. She examined the can the next morning and found it discolored and rusty on the inside, particularly around a knob on the inside where the tin plate was broken through. Appellee the next morning telephoned to a physician, who said he thought she had ptomaine poisoning, and at his direction she took some castor oil. She remained ill several days and the next week claimed to be unable to walk. She was confined to her bed about a week. Afterwards she went to see the physician to whom she had telephoned but did not find him in his office. After she had been ill about two weeks, she went to see Dr. Pollock, who diagnosed her case as ptomaine poisoning. He treated her a couple of days. She then visited another physician who treated her a couple of days, when she visited a fourth physician, Dr. Chenowith, who treated her for some time. The physicians testified she had symptoms of ptomaine poisoning and described the symptoms. The trial was in January, 1914, and one of the physicians testified she would not fully recover for sixty days from that time.

It is contended on behalf of appellant that there can be no recovery by appellee in this case because there is no warranty of the wholesomeness of provisions in cans sold by a retailer for immediate consumption; that there is a distinction between a sale of provisions open to inspection and provisions packed in cans or packages.

While that is the rule in some jurisdictions, the courts of Illinois appear to have held the contrary to be the rule in this State. In *Wiedeman v. Keller,* 171

Ill. 93, the opinion states: "Whether a retail dealer in meats and provisions for consumption is to be regarded as a warrantor that the goods he sells for immediate consumption are sound, wholesome, and free from all defects that may injure the health of the purchaser, or whether the vendor is relieved of responsibility where he has no knowledge of the defective character of the articles sold, and has used reasonable and ordinary care to guard against the selection or purchase of defective or unwholesome articles for sale to his customers * * *" is a question "not free from difficulty, and one upon which text-writers and courts are not harmonious * * *," and concludes: "In an ordinary sale of goods the rule of *caveat emptor* applies, unless the purchaser exacts of the vendor a warranty. Where, however, articles of food are purchased from a retail dealer for immediate consumption, the consequences resulting from the purchase of an unsound article may be so serious and may prove so disastrous to the health and life of the consumer that public safety demands that there should be an implied warranty on the part of the vendor that the article sold is sound and fit for the use for which it was purchased. It may be said that the rule is a harsh one; but, as a general rule, in the sale of provisions the vendor has so many more facilities for ascertaining the soundness or unsoundness of the article offered for sale than are possessed by the purchaser, that it is much safer to hold the vendor liable than it would be to compel the purchaser to assume the risk. Moreover, we have a statute which makes it a crime for any person to sell or offer to sell, or keep for sale, flesh of any diseased animal. (Hurd's Stat. 507.)"

The foregoing was announced as the law in this State in 1897. The Appellate Court of the First District in *Chapman v. Roggenkamp,* 182 Ill. App. 117, also has passed on the question involved in this case and held

a retailer of canned goods liable for damages from ptomaine poisoning caused by eating such goods which were impure. Since the opinion was rendered in the *Wiedeman* case, the Pure Food Statutes was passed in 1907. The statute (Hurd's St. ch. 127 b, secs. 6-9, (J. &. A. ¶¶ 10745-10747) is simply an enunciation of the law and affixes a penalty upon sales made in violation of it. These statutes are police regulations in the interest of public health, and do not make knowledge by the retailer a necessary element of the offense. The question whether lack of knowledge by the retailer of the impure or tainted condition of such goods was or was not a defense to an action for damage under the Federal Pure Food Law was passed upon and held not to be a defense in *United States v. Sprague,* 208 Fed. 419; and the same rule was held under a similar statute of Minnesota in *Meshbesher v. Channellene Oil & Manufacturing Co.,* 107 Minn. 104.

A civil action for injuries caused by a violation of public policy statutes will lie although the statute may not in terms give a civil right of action. *Purtell v. Philadelphia & R. Coal & Iron Co.,* 256 Ill. 110; *Streeter v. Western Wheeled Scraper Co.,* 254 Ill. 244. The conclusion to be drawn from a consideration of the authorities is that appellant was liable, if appellee in the exercise of due care for her health sustained damages from eating impure and tainted food sold by appellant.

It is also insisted that because appellee saw that the tomato sauce looked brown and the herring was tasteless, that appellee was not in the exercise of due care. The appellee only partook of a bite or two and then got up to wait on the table and then took another bite, when she was taken ill. We think the question of care exercised by appellee was for the jury to decide from all the evidence. Prudent persons might have done exactly what appellee did. If things that people eat do not always look alike and because of that fact it is nec-

essary to stop and have them analyzed before eating, then there would be much hunger in the midst of plenty.

It is also argued that the court erred in sustaining an objection to a question put to the manager of appellant's store: Does the defendant in that business undertake to supply the necessary skill in selecting goods for customers? It was immaterial what appellant undertook to do. Under the law it was obliged to use the skill necessary to supply wholesome goods for its customers. The objection was also properly sustained because of the leading character of the question and the further fact that it calls for a conclusion.

It is further contended that the court erred in giving appellee's third instruction, which concerns the measure of damages, if they should find for appellee. This instruction included her loss of time and inability to work as one of the elements of damage. Her evidence shows that she had earned from eighty dollars to one-hundred dollars a month taking orders for goods on a commission, just prior to her illness. Since the injury she has not been able to do anything. Appellant argues that because she has not an established business, she is not entitled to recover anything for her loss of time. Appellee made proof of her earnings and loss of time sufficient to submit that element of damages to the jury.

It is also insisted that the court erred in refusing two instructions requested by appellant. What we have said concerning the law governing such sales fully answers this contention of appellant.

Finding no error in the case the judgment is affirmed.

*Affirmed.*