25 N.J. Super. 6 (1953)
95 A.2d 425
LESTER J. HEATH, DOING BUSINESS UNDER THE ASSUMED NAME OF ALBANY LADDER COMPANY, PLAINTIFF-APPELLANT,
v.
CHANNEL LUMBER COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 1953.
Decided March 2, 1953.
*7 Before Judges EASTWOOD, BIGELOW, and JAYNE.
Mr. Joseph Coult argued the cause for appellant.
Mr. Gerald T. Foley argued the cause for respondent (Mr. Milton J. Finkelstein, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
A brief account of the principal events will adequately reveal the nature of this litigation. The plaintiff, Lester J. Heath, trading in Albany, New York, under the name of Albany Ladder Company, had for several years prior to 1947 engaged in the purchase, sale, rental, and repair of ladders. In 1947 he entered the business of manufacturing wooden extension ladders to the extent of cutting, fashioning, and collocating the requisite component parts. On February 11, 1947 he purchased from the defendant, Channel Lumber Company of Newark, 17,634 feet of lumber described in the invoice as "Ladder Stock & B. & B. 6/4 K.D. Hemlock." The species of wood ordered by the plaintiff was hemlock.
*8 From the ladder stock so purchased the plaintiff manufactured five extension ladders having a reach of 40 feet and sold them to C.R. Joyce, a roofing contractor of Delmar, New York. On May 27, 1948, one George Gustin, a roofer engaged by Joyce, while ascending one of the ladders, was caused to fall to the ground by reason of the fracture of its upright railings. Gustin sustained serious bodily injuries in the mishap, to recover compensatory damages for which he instituted an action in the Supreme Court of New York against Heath. Channel Lumber Company was given notice of the institution of the action. The insurer of Heath settled the action by the payment of $57,500 damages. The reasonableness of the amount paid in the settlement is acknowledged by the defendant in the present action.
It is of present importance to note the particulars in which Gustin alleged in his complaint that Heath was negligent:
"(a)  Manufacturing and selling a ladder in a dangerous and defective condition;
(b)  Manufacturing said ladder in violation of good and approved practice recognized in the ladder manufacturing industry;
(c)  Manufacturing said ladder out of improper and inadequate materials, that were not strong enough to support the weight likely to be placed upon it;
(d)  Failing to properly inspect the said ladder before selling the same;
(e)  In undertaking the manufacture of ladders when the defendant was incompetent and improperly trained in the manufacture of said ladders and in employing agents, servants and employees who were incompetent, inexperienced and negligent in the manufacture of said ladders;
(f)  Being careless, reckless and negligent in the selection of proper and adequate lumber and other materials that went into the manufacture of said ladder;
(g)  Using improper grades of materials that were defective and which defects could have been reasonably ascertained and determined by reasonable and proper inspection;
(h)  Failing to properly test said ladder at its various stages of manufacturing and at the time that its manufacture was completed so as to determine whether or not said ladder as proper, adequate and sufficient for the use for which its manufacture and sale was intended;
(i)  Being otherwise careless, reckless and negligent."
*9 In the consideration of the appeal before us, attention converges particularly upon item (c).
Subsequent to the settlement of the Gustin cause of action, Heath instituted in the Law Division of this court the action here under review to recover from the Channel Lumber Company reimbursement of the amount paid to discharge his liability to Gustin and other incidental expenditures.
The issues are concisely stated as follows in the pretrial order:
"This is a contract action and arises out of an alleged breach of warranty in the sale of lumber. Plaintiff asserts that he is a manufacturer of ladders and defendant a supplier of lumber; he alleges that on or about January 29, 1947 hemlock lumber was ordered by plaintiff from defendant and certain lumber was delivered in accordance with the accompanying invoice; that out of the lumber plaintiff manufactured a ladder which was sold to a contractor; that on or about May 27, 1948 an employee of said contractor was injured when said ladder collapsed and sustained injuries; that the cause of the collapse of the ladder was that one side of the ladder was of fir and not hemlock, the standard of construction was that of hemlock and not that of fir. That as a result of suit against him same was settled with the injured workman for $57,500 and it is by this suit that he seeks to recover this sum. He further asserts that defendant was put on notice on March 14, 1949 when plaintiff discovered that there was the defect in the ladder.
Defendant asserts that the wood sold and delivered to plaintiff was all hemlock in accordance with the agreement between them; that defendant made no representations as to quality or suitability of the lumber for any purpose; that plaintiff purchased lumber without reliance on the skill and judgment of defendant; that plaintiff had the opportunity to inspect and examine the lumber; that plaintiff was under a duty to examine the lumber before using it; that plaintiff failed to notify defendant of any alleged breach of warranty; that the damage claimed are not within the contemplation of the parties and are too remote and speculative."
At the conclusion of the introduction of the evidence adduced by the parties at the trial, the court granted the defendant's motion for a judgment of involuntary dismissal of the action. The plaintiff challenges the propriety of the judgment.
The rationale of the plaintiff's cause of action is that he, as a purchaser of warranted goods, was required to pay by *10 reason of a common law liability, damages to a third party as a result of the seller's breach of warranty. Vide, United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157, 167 (1950); Lissberger v. Kellogg, 78 N.J.L. 85 (Sup. Ct. 1909); Popkin Bros., Inc. v. Volk's Tire Co., 20 N.J. Misc. 1 (Sup. Ct. 1941); Frank Martz Coach Co., Inc. v. Hudson Bus, &c., Co., 23 N.J. Misc. 342 (Sup. Ct. 1945); General Home, &c., Co. v. American, &c., Inc., 26 N.J. Misc. 24 (Circ. Ct. 1947).
Other instructional decisions are: Boston Woven Hose and Rubber Co. v. Kendall, 178 Mass. 232, 59 N.E. 657, 51 L.R.A. 781 (Sup. Jud. Ct. 1901); Pullman Co. v. Cincinnati, &c., R.R. Co., 147 Ky. 498, 144 S.W. 385 (Ct. App. 1912); Pfarr v. Standard Oil Co., 165 Iowa 657, 146 N.W. 851 (Sup. Ct. 1914); Mallory S.S. Co. v. Druhan, 17 Ala. App. 365, 84 So. 874 (Ct. App. 1920); John Wanamaker, New York, Inc. v. Otis Elevator Co., 228 N.Y. 192, 126 N.E. 718 (Ct. App. 1920); Busch & Latta Paint Co. v. Woermann Construction Co., 310 Mo. 419, 276 S.W. 614 (Sup. Ct. 1925); Bethlehem Shipbuilding Corp. v. Joseph Gutradt Co., 10 F.2d 769 (C.C.A. 9, 1926); Miller v. New York Oil Co., 34 Wyo. 272, 243 Pac. 118 (Sup. Ct. 1926); Fred Wolstenholme v. Jos. Randall & Bro., 295 Pa. 131, 144 A. 909 (Sup. Ct. 1929); Standard Oil Co. v. Daniel Burkhartsmeier Cooperate Co., 333 Ill. App. 338, 77 N.E.2d 526 (App. Ct. 1948). Additional references: Restatement, Restitution, § 93, et seq.; 31 C.J. 453, § 52; 42 C.J.S., Indemnity, § 25; 27 Am. Jur. 467, §§ 18, 19.
A circumspect examination of the evidence is necessary. Initially, we do not hesitate to state that in our opinion there was evidence from which the jury might have logically and legitimately inferred the existence of the alleged warranty that the lumber was kiln-dried hemlock and that its use in the manufacture of ladders was in the contemplation of the defendant. Essentially supplementary was the testimony of the plaintiff's witness, Professor Koehler, a qualified xylotomist, who upon an examination of the characteristics of the fractures of the right and left rails of the ladder expressed *11 the opinion that the left rail had broken first thus shattering the right rail, and that from a microscopic inspection of the left rail he ascertained that it was from a species of true fir and not as was the right rail from western hemlock.
A studious consideration of this case concentrates our attention primarily and fundamentally upon the state of the evidence concerning the causal relationship between the breach of the warranty and the occurrence of the collapse of the ladder.
The law constantly encounters problems of causation. It must trace events to causes or concur with David Hume that there is no cause but only juxtaposition. The law, however, recognizes the existence of a causal affinity between antecedent and subsequent events and searches for what is called the jural cause, the proximate cause, the efficient cause. In that quest for the "proximate cause" the law sometimes selects the adjacent events and sometimes unites those wide apart. It often seems that the chart judicially to be pursued is not a test but a clew. Not uncommonly many causes of gradational significance are perceptible.
It has been noticed that Heath settled an action against him in which he was charged with a variety of negligent acts and omissions, some of which were the failure to manufacture the extension ladder in accordance with the standard of approved practice, the failure to engage in the manufacture of the ladder competent and experienced employees, the failure properly to inspect and test the strength of the ladder. Obviously, the failures of duty just mentioned were unrelated to the subject matter of the present defendant's warranty. It was disclosed that the plaintiff's method of testing a ladder consisted in placing the ladder in a horizontal position across two saw horses and then having one of his workmen place his weight upon it. That method of testing was characterized by Professor Koehler as unapproved and "likely to produce a compression failure in the ladder."
Then, too, there was evidence that at the time the ladder collapsed another man, weighing 198 pounds, was in addition to Gustin also ascending it behind him. True, Professor *12 Koehler acknowledged that the combined weight may have overloaded the ladder and caused a compression failure of the left rail but the more cogent question is, would the left rail have failed under such a weight had it been hemlock instead of fir?
Incidentally it is noticed that Professor Koehler asserted that the tensile strength of wood used in a ladder is a subject of engineering and not one within his field of expert knowledge. Moreover it was not made evident that the rail was not a species of "noble fir," which is said to have strength superior to that of "eastern hemlock." It was discovered that the hemlock rail was "slightly scant," that is, smaller in dimensions than recommended by the standard safety code applicable to the manufacture of ladders.
And so a basic issue of the case related to whether the breach of the warranty was the cause which naturally and probably led to and which may have been reasonably contemplated by the plaintiff and the defendant at the time of the sale to produce such a consequential injurious result.
In circumspectly considering this element of the case it is judicious to recognize the burden of proof legally descending upon the plaintiff in an action of this nature for restitution.
Initially it was incumbent upon the plaintiff to supply prima facie proof that he was legally obliged to pay damages to the injured third party. While the fact that the plaintiff chose to make a voluntary settlement of the alleged cause of action instituted against him by the injured third party does not of itself defeat his cause of action against this defendant for reimbursement, yet the contrast between a voluntary settlement and an adverse judgment indicates the increased burden in the former circumstance resting upon the plaintiff to disclose the existence of his actual liability to the third party which he has satisfied. The stipulation here is confined to the reasonableness of the settlement in amount.
The learned trial judge resolved in the present action that the plaintiff owed no duty to the third party to make a microscopic examination which according to the evidence was *13 the only means of discovering that the particular piece of wood was fir and not hemlock. With that pragmatically reasonable conclusion we agree.
What, then, does the evidence reveal to have been the basis of the plaintiff's liability which in this action is alleged to become transferable to the defendant? Assuredly the warranty is not a policy of liability insurance, nor does it purport to indemnify the plaintiff against a liability of the plaintiff incurred by reason of his own carelessness. Vide, Razey v. J.B. Colt Co., 106 N.Y. App. Div. 103, 94 N.Y. Supp. 59 (1905); Ellen v. Heacock, 286 N.Y. Supp. 740 (App. Div. 1936); Eisenbach v. Gimbel Bros., 281 N.Y. 474 (Ct. App. 1939).
There are certain features of the present case which ought not to be ignored. The defendant did not produce and sell the ladder in the fashion of a finished article suitable for immediate use. It did not sell an intrinsically dangerous material or instrumentality. At most, it sold milled but unprocessed lumber, represented to be hemlock, with the contemplation in general that it would be used in the manufacture of ladders. Certainly the defendant assumed no responsibility whatever for the height of the ladder to be manufactured by the buyer, the width and thickness of the side rails, the diameter of the rungs, their space apart, and the method of uniting the rungs with the side rails, each of which has a vital relationship to the safety of the appliance.
Mention of those characteristics is made to sharpen a realization of the necessity of some substantive proof which weighs heavier than surmise and conjecture that the efficient cause of the structural failure of the ladder was that one of its railings was fir and not hemlock without which circumstance the ladder would not have broken.
It seems necessary only to add that where the existing state of the evidence in a case of this nature renders it impossible logically and rationally to identify the natural and efficient cause of the mishap and attribute it to the breach of the warranty, the determination of the plaintiff's right to restitution should not be entrusted to the promiscuous and *14 speculative suppositions of the jury. Such, we conclude, was the posture of the proof in the present case. The plaintiff did not seek the recovery of general as distinguished from consequential damages for the breach of the warranty.
The judgment is affirmed.