Elizabeth Margaret DALLISON and Max Dallison, Appellants,

v.

SEARS, ROEBUCK AND CO., a corporation, Appellee.

No. 6979.

United States Court of Appeals Tenth Circuit.

Dec. 27, 1962.

Robert W. Johnson, Aurora, Colo., for appellant.

Thomas E. McCarthy, Denver, Colo. (Robert S. Mitchell, Denver, Colo., on the brief), for appellee.

Before PICKETT, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellants, Elizabeth Margaret and Max Dallison, brought this diversity action against appellee, Sears, Roebuck and Co., to recover damages for personal injuries suffered by Elizabeth as the result of the burning of a nightgown which she was wearing. The complaint alleged a breach of implied warranty in the sale of the nightgown under the provisions of the Colorado Uniform Sales

Act.[1] Appellee's defense, insofar as material to this appeal, was that the injuries sustained by Elizabeth were solely and proximately caused by her own negligence.

A jury trial resulted in a verdict for the appellee and judgment was rendered thereon in its favor. The appeal is from that judgment and the order denying appellants' motion for a new trial. The only issue involved is whether the trial court erred in instructing the jury on negligence as a defense to the action.

The nightgown in question was purchased by Elizabeth in the fall of 1959 at appellee's retail store in Southgate Shopping Center in Colorado Springs, Colorado. She also purchased a second nightgown at the same time. According to her testimony, both of the nightgowns appeared to be made out of the same material and appeared to be identical except for the fact that one was pink and the other blue. The two nightgowns were used along with others that she already owned and were given essentially the same type of laundry treatment and use as she had always given to similar items of wearing apparel.

Elizabeth was wearing the blue nightgown when she retired to bed at approximately 11:00 p. m. on January 12, 1960. She apparently went to sleep soon thereafter but was awakened at about 11:40 p. m. when her husband, Max, returned home from a bowling contest. She heard her husband out in the kitchen and requested him to prepare some scrambled eggs and toast, which he did, and brought them to her in the bedroom. Elizabeth remained in bed in a sitting up position while she ate the eggs and toast and, after consuming them, asked Max to give her a tuinol sleeping pill from the night stand on his side of the bed. He complied with this request and then left the bedroom and went to the livingroom to look at the evening paper.

Elizabeth took the sleeping pill and right afterward started to light a cigarette. According to her testimony, a portion of the ignited head of the match which she intended to use to light the cigarette flew off and lit on her gown near the waist line. She further testified that when the ignited portion of the matchhead came in contact with the gown, it ignited rapidly and burned in such a fashion that she was unable to extinguish the fire and that she screamed for her husband who came to her assistance and put out the fire but only after a major portion of the gown had burned, causing her severe and serious injuries, consisting of third degree burns upon approximately 40% of her body. She also testified that only a fraction of a second of time was consumed between the time she struck the match and when she first observed the flames on the gown and that it could not "have been more than around 5 seconds" from the time she struck the match until she heard her husband come into the room after she had screamed for him. Max testified that "probably five minutes or less" elapsed between the time he gave Elizabeth the sleeping pill and when she screamed for his assistance.

It was established at the trial that Elizabeth was in the habit of taking three-grain tuinol sleeping pills, as she did on the night in question, and had taken them on the average of 5 or 6 times a week for several years prior to the fire. Appellee presented expert testimony that tuinol is one of the most rapidly acting barbiturates available and that a three-grain tuinol sleeping pill

1. Colo.Rev.Stat.1953, 121–1–15, provides in part as follows:

"Implied warranties of quality.—Subject to the provisions of this article and of any statute in that behalf, there is no implied warranty or condition as to the quality of fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purposes. * * * *"

is a heavy dosage and is referred to as a hypnotic but that its effects would be delayed by the presence of food in the stomach. In answer to a hypothetical question, the expert witness testified that in his opinion a woman of Elizabeth's age and physical makeup, after taking the sleeping pill and under the circumstances, would have been only partially conscious at the time the fire started, would have reduced sensitivity to feeling heat and pain and, generally, would have diminished reflexes. Appellee also presented expert testimony to the effect that the pink nightgown purchased by Elizabeth, and which was not burned, was 100 per cent cotton fabric of a type generally and commonly used for wearing apparel. This expert witness testified that a sample of the pink gown was tested for burning characteristics and, as a result of such test, he concluded that it was of normal flammability and would not ignite and burst into flame upon momentary contact with a lighted match.

On these facts, appellants sought to recover damages claiming that Elizabeth's injuries were directly and proximately caused by a momentary contact between a matchhead and the blue nightgown she was wearing, which, in violation of an implied warranty of fitness for the purpose intended, was so highly combustible as to immediately burst into flame. On the other hand, appellee's claim or theory of the case was that the nightgown was not unusual or dangerously combustible and her injuries were solely and proximately caused by her own negligence in smoking and handling matches in bed, late at night, and while in a semi-conscious state induced by the taking of a highly potent sleeping pill or barbiturate.

The lower court, in its instructions, advised the jury of these opposing claims or theories of the case by the parties and gave the instructions [2] which appellants objected to on the ground that negligence was not a defense to their action. Appellants also specify as error the court's refusal to give their requested instruction to that effect.[3] Thus, we are squarely presented with the question of whether negligence is a proper defense in an action for breach of warranty.

It is clear that under Colorado law each party is entitled to have the jury properly instructed on his theory

2. "Now, as defense to this action, the defendant, Sears, Roebuck, denies there was a breach of implied warranty and claims the gown was fit for the purpose for which it was sold, and the defendant also contends in its pleadings that the injuries and damages suffered by the plaintiff, Elizabeth Margaret Dallison, were solely and proximately caused by her own negligent conduct and failure to exercise due care for her own safety."

"On the other hand, if you find that the nightgown was not of such an inflammable nature of [or] that it was reasonably fit for the purpose for which it was intended to be used, or if you find from the evidence that the plaintiff was negligent, that is, the plaintiff, Elizabeth Margaret Dallison, was negligent in the use to which the nightgown was put, your verdict must be for the defendant."

"If you should find, however, that the proximate cause of the Plaintiff's injuries was not the breach of the implied warranty, but was, rather, the negligence of the plaintiff, Elizabeth Margaret Dallison, then your verdict must be for the defendant."

"The defendant, as I have stated, not only denies a breach of an implied warranty, but claims that the injuries sustained by the plaintiff, Mrs. Dallison, were caused by her own negligence, which the defendant says was the proximate cause of her injuries."

"Negligence, ladies and gentlemen of the jury, is the failure or the omission to do something which under the circumstances a reasonably prudent person would do. It is the absence of ordinary care which is required to be exercised according to the circumstances."

3. "You are hereby instructed that whether or not the Plaintiff Elizabeth Margaret Dallison was negligent or contributorily negligent in the use of the gown purchased from Sears, Roebuck and Company is of no consequence and does not constitute a defense to the Plaintiff's action for breach of Implied Warranty."

of the case, providing such theory is supported by competent evidence, and it is the duty of the trial judge to give instructions that disclose each party's theory.[4] It is also clear that, as a general rule, it is incumbent upon the plaintiff in an action for breach of warranty to prove that the injuries were proximately caused by the breach of such warranty.[5] As previously stated, appellee's theory of the case was and is that the injuries suffered by Elizabeth were not proximately caused by any breach of implied warranty of fitness as to the nightgown but, rather, were solely and proximately caused by her own negligence in smoking and handling matches in bed under the circumstances discussed above. Thus, proximate cause was one of the important issues raised by the pleadings and an examination of the record clearly discloses competent evidence to support appellee's theory on the issue. We agree with appellee that, under Colorado law, it was entitled to have the jury properly instructed as to its theory on that issue and this the court did. In so instructing, the court was careful to confine the issue to negligence as distinguished from contributory negligence.

Appellants agree that under the rule prevailing in Colorado each party is entitled to have the jury instructed on his theory of the case, but they contend that such rule does not apply here because appellee's theory is nothing more than the assertion of negligence as a defense and negligence is not a proper defense in an action for breach of warranty. In making this contention, appellants argue that in ruling upon the question the courts have used the terms "negligence" and "contributory negligence" interchangeably and have actually made no distinction between the two terms. Assuming that this is the case, it is of little help to them. As stated by one author, "The rulings of the courts on this question of contributory negligence are less than entirely harmonious",[6] and such statement is, indeed, borne out by the cases. The weight of authority, and it is not a great weight, appears to be that contributory negligence on the part of the buyer of a product sold under a warranty of fitness is not a defense in an action against the manufacturer or seller of the product for breach of that warranty.[7] This is said to be "arguably the better view."[8] But, there is respectable authority in support of the view that contributory negligence is a proper defense.[9] In at least one jurisdiction,

4. Behr v. McCoy, 138 Colo. 137, 330 P.2d 535; Haller v. Gross, 135 Colo. 218, 309 P.2d 598; Maloney v. Jussel, 125 Colo. 125, 241 P.2d 862; Neilson v. Bowles, 124 Colo. 274, 236 P.2d 286.

5. Bahlman v. Hudson Motor Car Co., 290 Mich. 683, 288 N.W. 309; Jacquot v. Wm. Filene's Sons Co., 337 Mass. 312, 149 N.E.2d 635; 1 Hursh, American Law of Products Liability, § 1:21, p.p. 61–64.

6. 1 Hursh, American Law of Products Liability, § 3:9, at page 416.

7. Hansen v. Firestone Tire and Rubber Company, 6 Cir., 276 F.2d 254; Brown v. Chapman, 9 Cir., 304 F.2d 149, affirming Chapman v. Brown, 198 F.Supp. 78 (Hawaii, 1961); Young v. Aeroil Products Company, 9 Cir., 248 F.2d 185; Frank R. Jelleff, Inc. v. Braden, 98 U.S. App.D.C. 180, 233 F.2d 671; Rasmus v. A. O. Smith Corporation, 158 F.Supp. 70 (N.D.Iowa, 1958); Friend v. Childs Dining Hall Co., 231 Mass. 65, 120 N.E. 407, 5 A.L.R. 1100; Bahlman v. Hudson Motor Car Co., 290 Mich. 683, 288 N.W. 309; Jarnot v. Ford Motor Company, 191 Pa.Super. 422, 156 A.2d 568.

8. 1 Frumer and Friedman, Products Liability, § 16.01 [3], at page 367.

9. Arnaud's Restaurant v. Cotter, 5 Cir., 212 F.2d 883, cert. denied, 348 U.S. 915, 75 S.Ct. 295, 99 L.Ed. 717 (by implication); Crotty v. Shartenberg's New Haven, Inc., 147 Conn. 460, 162 A.2d 513; Sapiente v. Waltuch, 127 Conn. 224, 15 A.2d 417 (by implication); Sloan v. F. W. Woolworth Co., 193 Ill.App. 620; Nelson v. Anderson, 245 Minn. 445, 72 N.W.2d 861; Missouri Bag Co. v. Chemical Delinting Co., 214 Miss. 13, 58 So.2d 71, 33 A.L.R.2d 501; Heath v. Channel Lumber Co., 25 N.J.Super. 6, 95 A.2d 425; Eisenbach v. Gimbel Bros., 281 N.Y. 474, 24 N.E.2d 131; Razey v. J. B. Colt Co., 106 App.Div. 103, 94 N.Y.S. 59; Di Vello v. Gardner Machine Co., Ohio Com.Pl., 102 N.E.2d 289.

there are cases going both ways on the subject.[10] Neither of the parties, however, cite us to any Colorado case ruling upon the question and our own independent research reveals none.

In the absence of a decision by the Colorado Supreme Court on the question, we are governed by the well established rule of this Court that we will accept the considered determination of the trial court as to the local law, unless clearly convinced to the contrary.[11] This rule was well stated by Judge Pickett in the case of Mitton v. Granite State Fire Ins. Co., 10 Cir., 196 F.2d 988, at page 992:

> " * * * The Colorado courts have not passed upon the right to interest in cases similar to the one before us and we are unwilling to overrule the considered appraisal of the trial judge. His view of the Colorado law is entitled to great weight and should not be overruled unless it is clearly erroneous. (Citation of authorities)"

The Supreme Court also applies this principle in cases where the state courts have not decided the state question presented.[12] In this case, we have the considered determination of the Trial Judge, who it may be noted is also a former state district judge, that negligence is a defense to an action for breach of warranty in Colorado. We are unwilling to say that his determination on that issue is clearly erroneous. For these reasons, we must conclude that the instructions given by the trial court when viewed in their entirety were not prejudicial to the appellants.

The judgment is affirmed.

10. Compare Simmons v. Wichita Coca-Cola Bottling Company, 181 Kan. 35, 309 P.2d 633, and Challis v. Hartloff, 136 Kan. 823, 18 P.2d 199, with Frier v. Proctor & Gamble Distributing Co., 173 Kan. 733, 252 P.2d 850, and Graham v. Bottenfield's, Inc., 176 Kan. 68, 269 P.2d 413, 415. However, see 5 Kan.L.Rev. 128, 130, for a possible reconciling of these cases.

11. Woodmont, Inc. v. Daniels, 10 Cir., 290 F.2d 186, 188, Hamblin v. Mountain States Telephone & Telegraph Co., 10 Cir., 271 F.2d 562; Cranford v. Farnsworth & Chambers Company, 10 Cir., 261 F.2d 8.

12. Propper v. Clark, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480; MacGregor v. State Mutual Life Assurance Co., 315 U.S. 280, 62 S.Ct. 607, 86 L.Ed. 846.