304 P.2d 1068

Harvey FRALEY and Olwen Fraley, husband and wife, Appellants,

v.

Clair FORD, Appellee.

No. 6243.

Supreme Court of Arizona.

Jan. 2, 1957.

Yale McFate, Phoenix, for appellants.

Snell & Wilmer, Roland R. Kruse, Phoenix, for appellee.

WINDES, Justice.

Clair Ford, plaintiff, and Harvey Fraley, defendant, entered into an agreement whereby Ford sold to Fraley a tank load of rainbow trout to be delivered in the purchaser's pool. Delivery was made and checks were given for the purchase price. Soon after delivery the fish died and purchaser stopped payment on the checks. Ford sued Fraley for the amount represented by the checks. Judgment for the plaintiff and defendant appeals.

Eliminating trivial and technical matters the question presented is whether the court should have rendered judgment in favor of defendant for the reason that plaintiff breached an implied warranty that the fish when delivered were reasonably fit for the purpose intended.

The facts reasonably established by the evidence are: Plaintiff, the seller, had been in the business of raising, selling and transporting live trout all his life. His place of business was in Richfield, Utah. Under his contract with the defendant he was to transport and deliver the fish into a pool on defendant's premises in Scottsdale, Arizona. The fish were en route about seventeen hours in a tank on a truck. They were placed in defendant's pool and soon there-

after began to die and substantially all died within a week. Plaintiff knew defendant was purchasing these fish for the purpose of selling the angling rights to individuals. The exact cause of the death of the fish cannot be determined from the evidence. It is established, however, that it was either the quality of the water into which they were placed or poor quality of the fish. Jack Hemphill, an expert on the subject of fish culture and handling, testified through deposition that "If it isn't water quality, then it must be poor fish, because they did die, and something caused their death." This witness testified in his opinion the cause was delivery of the fish into water of different salinity without tempering. The plaintiff testified:

"It had to be the chlorine or some chemical or something or just unfit water for fish."

Defendant stated he treated the water for the elimination of chlorine as directed by Mr. Hemphill and had a Mr. Wagner from the Arizona Fish and Game Department test for chlorine. Mr. Hemphill stated the cause was not chlorine because of the length of time it took the fish to die. We think it is fairly established that the water did not contain this chemical. The only reasonable conclusion from the evidence is either that the fish died from a weakened condition or from delivery into water of a different quality than that from which they came. With this situation, defendant contends that under the statute, section 52–515, A.C.A.1939 [A. R.S. § 44–215], the plaintiff impliedly warranted the product to be fit for the purpose for which purchased and such warranty having been breached plaintiff cannot recover. The applicable portions of the statute are:

"Subject to the provisions of this chapter [article] and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose;

"2. Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality; * * *."

The parties have been unable to direct our attention to a ruling on an identical situation. We think the nearest analogy are cases dealing with the sale and delivery

of perishable property. The general rule is that when perishable property is sold and delivered f. o. b. place of origin, there is an implied warranty they will be properly packed for shipment so that when the goods reach the place of destination, they will be reasonably fit for the purpose intended. Harp, Hardee & Co. v. Haas-Phillips Produce Co., 205 Ala. 573, 88 So. 740; 77 C.J.S., Sales, § 326. It has likewise been held that this warranty is to the extent that they will remain in such condition for a reasonable time after delivery. Philip Olim & Co. v. C. A. Watson & Sons, 204 Ala. 179, 85 So. 460, 461. That was a case in which purchaser bought apples for resale to be stored by seller and shipped upon order of purchaser. The evidence showed the product was sound and good when transferred to the purchaser in the seller's warehouse but were in a decaying and unmerchantable condition when received at the point of destination. In disposing of the matter, the court said:

"So it is a clear implication from the correspondence between the parties that the apples, being for resale in the usual way, should be in a condition that would keep them sound and salable for a reasonable time for that purpose."

It should be noted that the expert, Mr. Hemphill, testified that it was recognized as common practice when transferring trout into water of unknown character, they

should be first tempered (gradually made accustomed to different water) to avoid the resulting shock. Plaintiff testified that he never tempered except for a difference in temperature and in this case there was insufficient temperature difference to require tempering.

Since the plaintiff was a man of years of experience in handling and delivery of this product and this was defendant's first venture in the field, we feel defendant was entitled to rely upon the skill and knowledge of plaintiff in doing everything reasonably necessary to effect a successful delivery of the fish so that they would serve the purpose for which purchased.

Defendant bargained for fish to be used for commercial angling. This purpose was entirely defeated either because of a weakened condition of the fish or because of shock resulting from delivery into water different from that from which they originated. Under the evidence either event could have been avoided by the plaintiff—the former by delivery of fish in a sound condition, and the latter by proper tempering of the fish before delivery. We think, when plaintiff agreed to deliver for the purpose intended, under the contract he impliedly warranted that he would do all that was reasonable and customary to enable the fish to live for a reasonable length of time to the end that the purpose intended by the

contract might be accomplished and the defendant might realize the benefit of his bargain. This plaintiff failed to do and, therefore, is not entitled to recover the purchase price.

Judgment reversed with instructions to enter judgment for defendant.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concurring.