No. 42,601

HELEN PATTERSON, *Appellee*, v. GEORGE H. WEYER, INC., and
RAYETTE, INCORPORATED, *Appellants.*

(370 P. 2d 116)

Opinion filed April 7, 1962.

*Donald L. Shughart,* of Kansas City, Missouri, argued the cause, and *Frank L. Bates,* of Kansas City, Kansas, was with him on the briefs for the appellants.

*Harold K. Wells,* of Kansas City, argued the cause, and *Albert M. Ross, James M. Barnett* and *Eldon L. Hagan,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action brought by Helen Patterson, plaintiff (appellee), against George H. Weyer, Inc., Rayette, Incorporated and Eleanor Jefferies, doing business as Eleanor's Beauty Shop, defendants, to recover damages for personal injuries alleged to have been sustained as a consequence of breach of an implied warranty as a result of a permanent wave sold and given to plaintiff by Eleanor Jefferies while using a Rayette Goddess cold wave permanent, which was manufactured and distributed by Rayette, Incorporated and sold and distributed locally by George H. Weyer, Inc., to Eleanor Jefferies to be sold, used and applied by her on customers visiting her beauty shop, particularly the plaintiff.

The petition alleged in pertinent part that when defendants sold, distributed and applied to plaintiff's hair and scalp the Rayette Goddess cold wave permanent they impliedly warranted and represented it to be wholesome and fit for human hair, head and scalp;

that plaintiff relied upon the warranty, accepted and was given the mentioned cold wave permanent; that it was not wholesome, fit or suitable for her hair or scalp; and that it was poisonous and highly injurious to human hair and scalp, and defendants thereby breached their implied warranty.

Defendants George H. Weyer, Inc., and Rayette, Incorporated, answered admitting their corporate existence and denying generally plaintiff's other allegations. As an affirmative defense defendants pleaded contributory negligence of the plaintiff in failing to warn them of an alleged existing allergy or physical condition at the time she requested the permanent wave. Plaintiff replied by way of a general denial.

At the close of plaintiff's evidence the case was dismissed as to defendant Eleanor Jefferies and her answer is not abstracted here.

On the basis of the issues thus joined the case was tried to a jury, which, in answer to special questions submitted to it by the court, found that the product in question (Rayette Goddess cold wave permanent) was produced and marketed by defendants (Rayette, Incorporated, and George H. Weyer, Inc.) to be used only by licensed beauty operators according to instructions as to the type of said product to be used on four different classes of hair; that the beauty operator (Jefferies) followed instructions in using the product on plaintiff's hair; and that the waving solution in the product was injurious to plaintiff and plaintiff was not subject to any unusual allergy or physical condition causing her to have unusual symptoms when the product was used upon her head. The jury also returned a general verdict for plaintiff in the sum of $1,500 for which judgment was entered.

Defendants (appellants) Rayette, Incorporated, and George H. Weyer, Inc., appeal only from the order of the trial court overruling their motion for a new trial.

At the outset it may be stated that in this jurisdiction a manufacturer, distributor or retailer who sells hair preparations does so under the implied warranty that such product is suited and fit for the purpose for which it is sold. (*Graham v. Bottenfield's, Inc.*, 176 Kan. 68, 269 P. 2d 413; 1 Products Liability, Hursh, § 3:18, pp. 429-431.) Defendants contend plaintiff failed to prove the breach of implied warranty in not showing the permanent wave was deleterious, harmful and unwholesome.

The underlying issue presented on this appeal is whether the

evidence is sufficient to sustain the findings of the jury that the application of the permanent wave product manufactured by one defendant and distributed and sold by the other was unwholesome or deleterious and proximately caused plaintiff personal injury. An examination of plaintiff's evidence most favorable to her discloses that Mr. Hoffman, chief research chemist for Rayette, Incorporated, testified that the mentioned permanent wave had been manufactured and on the market since the year 1953; that each container of the cold wave lotion and solution has marked on it the directions for use; that defendant Rayette writes on the outside of the container, "For Professional Use Only. Read directions before using."; that the product is sold only to licensed beauty operators; that the directions are very explicit in outlining the steps necessary to prepare the wave and to test it during the application and to see that the hair isn't overprocessed, that they also caution the operators of overabundance or sloppage of the lotion on the patron's scalp or skin; and the directions say, "Important. Don't give a cold wave to any patron who says she has experienced allergic reaction from a cold wave preparation. If she has a history of abnormal response to cold waves, avoid difficulty by abstaining from cold waving her hair." Mr. Hoffman further testified that there are certain instructions given to beauty operators in connection with using waving lotions on people who have tinted hair and that it is up to the discretion of the beauty operator to thoroughly examine the hair and recommend specified or very mild lotions. He also testified if the licensed operator believed the condition of the scalp were such as to warrant safe use of the permanent wave solution, the company would not quarrel with that.

The evidence further disclosed that plaintiff had been a regular customer of Eleanor's Beauty Shop for about six months. Each week during that time plaintiff had a shampoo and set, and every three or four weeks a hair tint. On January 10, 1959, pursuant to an appointment, plaintiff went to this same shop for a cold wave permanent. The operator testified that when the plaintiff first came to see her she ascertained that plaintiff had no allergies and since that time had never noticed nor experienced anything unusual with regard to plaintiff's skin or scalp. In view of no history of any allergy, Eleanor Jefferies determined that plaintiff's scalp and skin were normal, and, pursuant to the directions on the container,

applied the Rayette Goddess cold wave special solution for tinted and dyed hair.

The evidence further disclosed that prior to going to bed that night plaintiff discovered two sores on the back of her neck at the edge of the hairline. The following morning she noticed several spots on the front of her head and by mid-afternoon her head was completely covered with sores of a weeping nature. Plaintiff went to see Mrs. Jefferies who advised her to apply vaseline to the sores and consult a doctor if the irritation did not clear up. The following morning, January 12, plaintiff went to see Dr. C. Omer West, a well-qualified dermatologist, who administered light treatment to plaintiff at his office, and, in addition, prescribed a solution for her to apply to her head at home. Plaintiff further stated that she had never had any trouble with her scalp and skin prior to or since the date in question although she had had many permanents both before and since.

Dr. West gave his expert opinion in regard to the causal relationship between the application of the permanent wave and plaintiff's injury. He stated this was one of the most severe conditions of this type he had ever seen; that it was a chemical burn, the whole scalp being red, inflamed, and with marked eczema. When asked for an answer to a hypothetical question propounded on the factual situation as hereinbefore related, and based upon a reasonable medical certainty, both from a medical and surgical standpoint, the doctor described the condition as a chemical trauma of a severe nature, characterized by marked chemical burn. He stated that he had seen many burns of this type from the time permanent waves were first started, and concluded by saying that from his experience with cold waves he would certainly have an opinion that plaintiff's condition was caused by the solution used in waving the hair.

It is properly contended by defendants that the burden of proving a breach of an implied warranty was on the plaintiff and that that burden was not sustained simply by showing the permanent wave was applied and that she subsequently suffered injury. The proof must show facts and circumstances leading definitely to the conclusion that the product was unwholesome and not fit for the purpose for which it was intended. (*Swengel v. F. & E. Wholesale Grocery Co.*, 147 Kan. 555, 77 P. 2d 930.) When a manufacturer puts into a product to be sold for use a substance that has deleterious qualities and a tendency to harm its users, the manufacturer

and not the user should shoulder the risk of injurious consequences. The same risk should be borne by the distributor and retailer who sell or apply the article to a prospective user who, relying on the retailer, is entitled to believe that the article is reasonably fit for the purpose for which it is sold. When the plaintiff was given the permanent wave she had no opportunity to examine or inspect the sealed package used by the operator or to read the directions thereon. She had no way of knowing it was sold only to licensed operators with caution as to its use, or that it contained dangerous ingredients when applied to the hair and skin. The plaintiff, having previously suffered no ill effects from hair waves and hair tints, and having been found by the operator not to be allergic, had every reason to believe that she would have no ill effects from the warranted permanent wave. The evidence was reasonably sufficient for the jury to have found plaintiff to be free from any allergy.

It was not incumbent upon the plaintiff to produce a chemical analysis of the product or medical testimony showing it poisonous or deleterious when the application of it to her hair and scalp was followed by symptoms from which the simple, reasonable and common-sense inference could be drawn by the jury that plaintiff suffered injury, though not permanent, as a direct result of the application of the permanent wave. This, coupled with the definite medical testimony of the dermatologist that in his medical opinion the chemical trauma suffered by the plaintiff was due to the solution used in waving plaintiff's hair, was sufficient to establish a causal relation between the application of the Rayette permanent wave and plaintiff's resulting injuries. (*Swengel v. F. & E. Wholesale Grocery Co.*, supra; *Cernes v. Pittsburg Coca Cola Bottling Co.*, 183 Kan. 758, 762, 332 P. 2d 258, 77 A. L. R. 2d 208.) Neither was it incumbent upon the plaintiff to exclude the possibility that the accident might have happened in some other way than that contended by her. We think the evidence was sufficient to support the findings of the jury and their general verdict.

Defendants next contend it was error for the court to refuse to give certain of its requested instructions. We will not attempt to list these requested instructions and those given by the court. Suffice it to say they have been examined, and we believe the instructions given adequately cover the matter contained in the requested instructions.

It is also contended that the court erred in its instructions given

to the jury. We are of the opinion that the instructions given adequately stated the law as applicable to the facts in the instant case.

Other questions raised have not been overlooked but have been found to be without sufficient merit to justify reversal of the case. The judgment of the trial court is affirmed.

PRICE, J., dissents.