418 P.2d 364

**Betty Jo REVELS and Millard Revels, her husband, Appellants,**

v.

**Dr. Ernest E. POHLE, Appellee.**

**No. 7511.**

Supreme Court of Arizona.

In Division.

Sept. 28, 1966.

Hash & Bernstein, by V. L. Hash, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Robert W. Browder, Phoenix, for appellee.

UDALL, Justice.

Millard and Betty Jo Revels, the plaintiffs, brought suit against the defendant, Ernest E. Pohle, to recover damages for alleged malpractice by defendant upon the person of Betty Jo Revels. The alleged malpractice is based upon the postoperative care of plaintiff after a hysterectomy operation. The case was tried before a jury and,

at the close of the evidence for plaintiffs, the court granted a motion for a directed verdict in favor of defendant, on the ground that plaintiffs had failed to sustain their burden of proof and had not as a matter of law made out a prima facie case against the defendant. Judgment was rendered on the verdict, and, after the usual motion for new trial was overruled, this appeal was taken.

■ There are five assignments of error presented to us on this appeal. Assignment No. 1 is that the trial court erred in directing a verdict for the defendant at the close of plaintiffs' case for the reason that plaintiffs' proof established acts of negligence on the part of defendant of the grossest kind and created a question of fact for the determination of the jury. This assignment raises the question whether, taking the evidence as a whole and treating it in the light most favorable to plaintiffs, as we must do when the court instructs a verdict in favor of defendant, there was sufficient evidence to have the case submitted to the jury for a verdict on the merits.

About May 14, 1958, the defendant performed a hysterectomy on Betty Jo Revels. There is no serious contention in the record that defendant did not follow the approved medical standard in performing said operation. Dr. Pohle used three different types of suturing material, one of which was steel, in sewing up the plaintiff. Mrs. Revels was released from the Tempe Hospital two weeks later on a Thursday, and told by defendant to return for an examination on the following Sunday, which she did. On that Sunday, Dr. Pohle. cleaned the wound and put on a fresh bandage. Thereafter, for a period of one month, Mrs. Revels saw defendant once a week. During the months of July and August she called at his office twice a month and from September through January of 1959, she visited Dr. Pohle once a month. Plaintiff paid the usual charge for an office visit on each such occasion and according to her testimony she complained on each visit of "sticking pains" in the incision of her abdomen.

Mrs. Revels further testified that during the months after her operation while she was under defendant's care, her condition was such that she lost weight, could not eat or sleep, was very nervous and that she could not stretch out at full length because of the pain in her incision, all of which facts she conveyed to Dr. Pohle. Despite such repeated complaints, defendant did not on any occasion examine Mrs. Revels by palpation and inspection nor did he give her an x-ray examination, but merely gave her some pills and told her to "get a little, meat on her bones and it would go away." Mr. Revels gave testimony that his wife continually complained to him of the "sticking pain" and that he had on occasion examined her abdomen and had felt some foreign substance in the incision. There was also evidence that while Dr. Pohle was on vacation in August of 1958, plaintiff was seen by Dr. Clark, an associate of defendant, who after hearing her complaint concerning the sticking sensation, gave her two shots in the abdomen, opened the incision and removed one steel suture before sewing her back up.

In February of 1959, a discontented Mrs. Revels discontinued her visits to defendant and went instead to Dr. Price, who treated her until the following August, at which time she conferred with Dr. DePinto, who in turn referred her to a surgeon, Dr. Stannard. Dr. Stannard examined plaintiff by palpation and inspection and found some nodulation beneath her healed hysterectomy scar. He had an x-ray ordered and it disclosed that the nodules were opaque material, whereupon he informed Mrs. Revels of the necessity for an operation. Dr. Stannard operated on September 4, 1959, and removed the small lumps, which were determined to be steel suture material, after which plaintiff made a complete recovery and no longer suffers any pain or nervousness or other discomfort because of her incision.

Plaintiffs do not contend on this appeal that defendant was negligent in the manner in which he performed the hysterectomy on Mrs. Revels, but rather that a condition sub-

sequently developed which could, if defendant had not been negligent in his postoperative care and had properly examined Mrs. Revels, have been discovered and been corrected sooner, thus circumscribing the prolonged period of suffering she was forced to endure. Dr. Pohle, in seeking to uphold the validity of the directed verdict given him by the trial court, argues that plaintiffs not only did not show by affirmative evidence the standard of medical practice in the Tempe area in 1958 to which he was required to conform, but further did not show by expert medical testimony that the postoperative care given by him departed from the established standard for cases like that of Mrs. Revels.

Since our decisions in Butler v. Rule, 29 Ariz. 405, 242 P. 436, and Boyce v. Brown, 51 Ariz. 416, 77 P.2d 455, the general rules of law governing actions of malpractice are well established in this state. Our opinion in the Boyce case at page 421, 77 P.2d page 457 contains the broad statement that in malpractice suits " * * * negligence on the part of a physician or surgeon, * * * must be established by expert medical testimony * * *." This rule is in accord with the weight of authority generally where the defendant's use of suitable professional skill is a subject calling for expert testimony only, or the question to be determined is strictly within special and technical knowledge of the profession and not within the knowledge of the average layman. But the force of the rule is broken when the act or omission comes within the realm of common knowledge and thus, there is an exception to the rule that is as well settled as the rule itself, and that is expert testimony is not required where " * * * the negligence is so grossly apparent that a layman would have no difficulty in recognizing it." Boyce v. Brown, supra, at page 421, 77 P.2d at page 457.

In reviewing the record, we see that the postoperative care given by defendant to Mrs. Revels, according to her testimony, consisted of giving her some pills occasionally and telling her that she would be all right after she put on some weight. That Dr. Pohle had in effect paid no attention to her constant complaints of a sticking pain in her incision for he never in the eight months following her operation, while she was under his care, examined her incision by palpation, inspection or by x-ray. Testimony bearing upon medical standards or the proper treatment of Mrs. Revels is conspicuously absent from the record. Defendant merely testified that he had done what was required by her condition as it existed at the time she was under his care. Dr. Stannard testified as to the condition he found in August, 1959, and what he did, but he appears to have been a somewhat reluctant witness and successfully parried nearly all questions attempting to elicit expressions of expert opinion. He did state however, that the steel sutures he removed were the cause of Mrs. Revels' pain.

It is thus obvious that the plaintiffs did not show by expert medical testimony either the standard of care or that defendant departed from such and therefore, if the aforementioned general rule was applicable to this case, the trial court's action in directing a verdict for defendant was proper. However, we are of the opinion that the facts of this case remove it from the operation of the general rule. If plaintiffs' testimony is believed, there is the element here of continued treatment with little or no effort on the part of defendant to discover the cause and relieve his patient's pain. We are not here faced with the situation where a doctor, after a careful examination of his patient, in the exercise of his professional judgment determines that another operation is not needed and that his patient will be fine after merely gaining some weight. For, in such a situation we have made it quite clear that expert testimony is a necessity to hold the physician liable for malpractice. What we are faced with is a situation wherein it is alleged that a careful examination was not made by the defendant doctor and plaintiffs' evidence tended to show that if an examination had been made by defendant, it would have revealed a condition, the clearing up of which re-

quired some medical attention, whether it be surgery or another mode of treatment.

■ The importance of a careful examination by a physician on the liability of a doctor to his patient for alleged malpractice was recognized by this Court in Butler v. Rule, supra, 29 Ariz. at page 416, 242 P. at page 439, where we stated, quoting from another case:

> " 'The law thus requires a surgeon to possess the skill and learning which is possessed by the average member of the medical profession in good standing, and to apply that skill and learning with ordinary and reasonable care. *He is not liable for mere error of judgment provided he does what he thinks is best after a careful examination.* * * *' " (Emphasis added.)

The key words in the above quotation are "provided" and "after." One does not have to be a doctor to know that due care was not exercised if a physician acts without giving a thorough and careful examination, such as the condition of the patient and attending circumstances will permit.

■■ It is a general proposition that a surgeon owes the same duty of care and skill in the treatment of his patient after an operation as in performing it unless the terms of his employment otherwise limit his services or the patient refuses them.

> "This duty of care may also require a surgeon to use x-rays after an operation or resort to other means of determining the advisability of a supplementary operation or other special treatment * * * although in some instances the failure of a physician or surgeon to make an examination by x-rays after an operation or other treatment has been held as a matter of law not to constitute negligence under the circumstances of a particular case." 41 Am.Jur., Physicians and Surgeons, § 98.

Thus it was that in Boyce v. Brown, supra, 51 Ariz. at page 423, 77 P.2d at page 458, we held that " * * * laymen cannot say that in all cases where there is some trouble with the internal organs that it is a depar-

ture from standard medical practice to fail to take an X-ray. * * *" But, we do believe that laymen can say that in all cases where there is continual complaints of pain from a patient over a substantial period of time, that it is a departure from standard medical practice for the doctor to fail to examine the patient in any manner. Such amounts to malpractice unless proof tending to excuse the omission is introduced especially in cases such as the one now before us wherein there was evidence showing that another physician by examining the patient by palpation and inspection, found and was thus able to rectify the condition causing the pain.

■ We thus conclude that there was a question for the jury as to whether the defendant was negligent and therefore, the trial court improperly instructed a verdict in favor of the defendant.

Having determined that the trial court did err and that its judgment must therefore be reversed, we need not consider the other questions raised by the plaintiffs.

Judgment of the lower court is reversed and the cause remanded for a new trial.

STRUCKMEYER, C. J., and BERNSTEIN, V. C. J., concur.