431 P.2d 108

David W. BAILEY, by his guardian ad litem, Margaret P. Bailey, Appellant,

v.

MONTGOMERY WARD AND COMPANY, a corporation, Appellee.

No. 2 CA–CIV 313.

Court of Appeals of Arizona.

Aug. 17, 1967.

Rehearing Denied Oct. 25, 1967.

Review Denied Nov. 28, 1967.

Lillian S. Fisher, Tucson, for appellant.

Browder & Gillenwater, by Robert W. Browder, Phoenix, for appellee.

HATHAWAY, Chief Judge.

David W. Bailey, a minor age 11, is the plaintiff in this personal injury action filed in superior court by his guardian ad litem. The action based on implied warranty and on tort was tried to a jury. The plaintiff has appealed from the superior court's granting the defendant's motion for a directed verdict and the plaintiff appeals from the judgment thereon.

The plaintiff's mother had seen advertisements of a pogo stick in the defendant's catalog. It was manufactured by Rapaport Brothers Incorporated. She ordered the toy through the catalog. It was purchased as a Christmas gift for the plaintiff's younger brother.

The pogo stick was obtained in a sealed box from the defendant and before Christmas was opened only once by the father, Charles G. Bailey, who looked at it and replaced it in the box. It was not opened again until Christmas morning when the younger child, Ricky, for whom the gift was intended then opened it.

Ricky took the stick outside and tried to use it a couple of times and brought it back into the house. The pogo stick remained in the house until the plaintiff's mother, Margaret P. Bailey, a few minutes later told the children that the pogo stick could not be used in the house. Shortly thereafter the plaintiff took the stick outside and jumped on it "for a little bit of time." He then went into the house bleeding profusely from his eye saying that the pogo stick had injured him.

The plaintiff, apparently the only witness to the accident, testified:

"* * * I was out riding it [the pogo stick] and it had only been rode on about six times and then about the seventh, the spring got loose or something and the cap hit me along the eye, and cut me right there. I was bleeding real bad."

Following the accident, the Baileys were unable to find the black rubber cap that fit on top of the stick. The spring was found on the other side of their house about sixty feet away.

No part of the pogo stick was offered in evidence, but an advertisement from the Montgomery Ward catalog was introduced in evidence showing that the pogo stick was not recommended for use by children over 90 pounds. Both the plaintiff and his younger brother Ricky were well under this weight.

Although A.R.S. § 44-215 of the Uniform Sales Act, relating to implied warranties of quality arising under the law of contract, is pleaded, we feel it is not applicable. Since the pogo stick was purchased by the plaintiff's mother for her son Ricky, no privity exists between plaintiff and defendant.

Liability for product inflicted injuries in many jurisdictions has undergone an exodus from its involvement in contract law and has returned to rest upon its logical basis, tort law. Breach of warranty liability for personal injuries caused by defective products evolved from action on the case in the nature of deceit. See Shippen v. Bowen, 122 U.S. 575, 7 S.Ct. 1283, 30 L.Ed. 1172 (1887). Dean Prosser has commented:

"All this [talk of contract] is pernicious and entirely unnecessary. No one doubts that, unless there is privity, liability to the consumer must be in tort and not in contract. There is no need to borrow a concept from the contract law of sales; and it is 'only by some violent pounding and twisting' that 'warranty' can be made to serve the purpose at all. Why talk of it? If there is to be strict liability in tort,

declare it outright, without an illusory contract mask. Such strict liability is familiar enough in the law of animals, abnormally dangerous activities, nuisance, workmen's compensation, and respondeat superior." 69 Yale Law Journal 1099, 1134 (1960).

We agree that personal injuries caused by defective products should be based upon tort law. We deem it unnecessary to trace the historical development of tort liability in product liability cases. See Prosser, The Implied Warranty of Merchantable Quality, 27 Minn.Law Rev. 117 (1943); Restatement (Second), Torts § 402A, Comment b; and, Greenman v. Yuba Power Products Co., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962).

■■■ The Restatement (Second), Torts exposition on the subject of strict liability in relation to the sales of defective products, we believe states the correct rule with concision:

"1. One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

\* \* \* \* \* \*

"2. The rule stated in subsection one applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." Restatement (Second), Torts § 402A.

Prior involvement of personal injury-product liability cases with the law of warranty, is recognized in Restatement (Second), Torts § 402A, Comment m:

"\* \* \* there is nothing in this section which would prevent any court from treating the rules stated as a matter of 'warranty' to the user or consumer. But if this is done, it should be recognized and understood that the 'warranty' is a very different kind of warranty from those usually found in the sale of goods and that it is not subject to the various contract rules which have grown up to surround such sales."

■■■ The Restatement rule applies to all persons engaged in the business of selling products for use or consumption—manufacturers, wholesalers, or retailers. The rule is founded in the special responsibility for public safety assumed by those who carry on the business of supplying products that may endanger person or property, coupled with a forced public reliance upon the suppliers. Restatement (Second), Torts. § 402A, Comment f.

Although not the law of the majority of jurisdictions the trend today is towards. the Restatement view. Dean Prosser cites. the following jurisdictions as being in apparent accord with the Restatement rule: California, Connecticut, District of Columbia, Florida (as to manufacturers and partially as to retailers), Iowa, Michigan, Minnesota, Missouri (as to manufacturers), New Jersey, New York, Pennsylvania (as. to ultimate purchasers, their households, and their guests), and Tennessee. According to the federal courts Kansas, Oregon, Texas, and Vermont are also in accord. Statutes in Virginia and Wyoming are considered as to have adopted the rule. Products Liability, 16 U. of Fla.L.Rev. 421, 429 (1964).[1]

---

1. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960) a landmark decision involved an action by the wife of a purchaser of a new car who was injured while driving on a smooth highway when suddenly and unexplainedly the automobile went out of control. The action was brought against the manufacturer and the dealer and was based upon an implied warranty of merchantability. Judgment for the plaintiff was affirmed by the Supreme Court of

California was the first jurisdiction to specifically adopt strict liability in tort. The California Supreme Court, in Greenman v. Yuba Power Products Co., supra, affirmed the lower court's decision holding the manufacturer of a shopsmith tool liable for personal injuries to the plaintiff. However, basis for affirmance was strict liability in tort and not breach of an implied warranty of merchantability or breach of a warranty of fitness under the Uniform Sales Act. After citing numerous cases Chief Justice Traynor said:

"Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law * * * make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort.

"* * * 'The remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales.'" 27 Cal.Rptr. at 701, 377 P.2d at 901.

In accord, see, Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y. S.2d 592, 191 N.E.2d 81 (1963).

We find no Arizona Supreme Court case specifically holding that strict tort liability applies in Arizona, but language in the recent case of Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (filed June 14, 1967) indicates that the Supreme Court approves this doctrine. The court said:

"The allegation of implied warranty adds nothing to appellant's case. The liability of a manufacturer of an article is in tort (see Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732, and concurring opinion of Justice Lockwood in Nalbandian v. Byron Jackson Pumps, 97 Ariz. 280, 399 P.2d 681), and it is not assumed by agreement but imposed by law. Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094."

See also O. S. Stapley Co. v. Miller, 6 Ariz.App. 122, 430 P.2d 701 (filed July 27, 1967) specifically applying the strict liability in tort doctrine.

■ This rule in no way relieves the plaintiff of his burden of proof. The plaintiff in a product liability action against a manufacturer or a retailer must prove both that his injury has been caused by a defect in the product and that the defect existed when the product left the hands of the manufacturer or retailer. See Restatement (Second), Torts § 402A, Comment g.

■ Our concern in the instant case is with the sufficiency of the evidence presented. If, when viewed most favorably to the plaintiff, it warranted submission to a jury on any of the theories presented, the superior court's directing the verdict against the plaintiff and the judgment thereon must be reversed. Rhodes v. El Rancho Markets, 4 Ariz.App. 183, 418 P.2d 613 (1966); Campbell v. City of Tucson, 4 Ariz.App. 155, 418 P.2d 401 (1966); Revels

New Jersey holding that justice requires that both defendants be charged with an implied warranty in favor of the ultimate purchaser, *regardless of lack of privity or existence of express warranty.* This case is noted by both Dean Prosser and Page Keeton as adopting the specific idea of the Restatement (Second), Torts § 402A and using the term of implied warranty as expressed in Comment m.

Many other cases can be found where strict liability has been based upon the warranty theory as discussed in § 402A, Comment m. See Thompson v. Reedman, 199 F.Supp. 120 (E.D.Penn.1961); Picker X-Ray Corporation v. General Motors Corporation, 185 A.2d 919 (D. C. Municipal Court Appeals 1962); Peterson v. Lamb Rubber Company, 54 Cal.2d 339, 5 Cal.Rptr. 863, 353 P.2d 575 (1959); and, McBurnette v. Playground Equipment Corp., 137 So.2d 563 (Fla.1962).

v. Phole, 101 Ariz. 208, 418 P.2d 364 (1966). Also:

"* * * whatever competent evidence appellants have introduced, including all inferences that can reasonably be drawn therefrom, is assumed to be true, and, if the evidence is of such character that reasonable minds may differ on the inferences to be drawn therefrom, the case must be submitted to the jury."

Sturm v. Heim, 95 Ariz. 300, 304, 389 P.2d 702, 705 (1964).

See also, Heth·v. Del Webb's Highway Inn, 102 Ariz. 330, 429 P.2d 442 (No. 8206, filed June 22, 1967).

The defendant maintains that the plaintiff in all products liability cases based on breach of implied warranty must prove that he was injured because there was something wrong with the product at the time it was sold and that such defect caused the injury. It contends that the trial court correctly directed the verdict in its favor because no evidence was offered that the product was defective in manufacture or design at the time it was sold or at any time. Defendant asserts that submission of the question of liability to the jury would have invited conjecture.

We recognize the correctness of defendant's statement of the plaintiff's burden of proof whether the action is based on breach of an implied warranty or tort. However, the defendant's contentions overlook evidentiary problems involved in the plaintiff's establishing his prima facie case.

We will consider first, whether the plaintiff established a prima facie case of injury caused by a defect in the pogo stick, while being used in the manner for which it was intended. The facts are provable by direct or circumstantial evidence, or by both. If sufficient evidence is presented upon which the jury may reasonably infer the true facts directly resulting in the injury to the plaintiff, he has established his prima facie case and the defendant then must go forward with any rebuttal evidence it may have. A "defective" article has been defined as one that is "not reasonably fit for the ordinary purposes for which such articles are sold and used * * *." Santor v. A and M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305, 313 (1965). See also Patterson v. George H. Weyer, Inc., 189 Kan. 501, 370 P.2d 116 (1962); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); and, Marathon Battery Company v. Kilpatrick, Okl., 418 P.2d 900 (1966).

Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, at page 283, 399 P.2d 681, at page 683 (1965), the Supreme Court of Arizona said:

"In contract, the failure of a product to be reasonably fit for the purpose for which it was to be used within the guaranteed time is all the plaintiff need prove to establish a prima facie case. The plaintiff need not prove negligence in the manufacture of the warranted product."

Although *Nalbandian* dealt with an implied warranty of fitness based on A.R.S. § 44–215 of the Uniform Sales Act, we recognize the definitions of warranties in this Act as providing appropriate standards for this court to look to for determining defectiveness of a product.

The jury may have reasonably inferred from the facts that the injury resulted from a defect in the pogo stick. The plaintiff testified that he was well acquainted with the use of a pogo stick; that he had used one in the past; and that he was able to use the pogo stick on Christmas morning. We take judicial notice that a pogo stick is expected to be used in a rugged manner. The manufacturer must expect that a pogo stick will be subjected to harsh contact with pavement, dirt, and asphalt; and that it may on occasion be dropped or, the rider falling or tossed off, it may be thrown into a tree or a wall or knocked violently· to·the ground. We conclude that since the plaintiff was acquainted with the use of the pogo stick and had merely jumped on it "about six times" the jury may reasonably have inferred that the direct result of the pogo stick's flying apart and injuring

the plaintiff was due to a defect in the design or manufacture of the stick.

■ The jury could also have reasonably concluded from the facts that the pogo stick was in substantially the same condition on Christmas morning when the injury occurred, as it was when it left the hands of the defendant retailer. The pogo stick arrived at the plaintiff's house in a sealed package, having been ordered from the defendant's catalog. The plaintiff's mother, Margaret Bailey, did not open the package upon its arrival or before it was opened by the plaintiff's brother Ricky. The plaintiff's father testified that he did open the package before Christmas morning and "I think I just slipped it out of the box and looked at it. I never pulled it out or dropped it or anything like that." The pogo stick was then gift wrapped and so remained until Christmas morning when it was opened and played with by the children for a few minutes before the mother came down. She told the children they could not play with it in the house. The plaintiff then took it outside and played with it for a short period of time. He testified that he had jumped on it about six times and "the spring got loose or something and the cap hit me along the eye." Due to the rugged use expected of a pogo stick, we conclude that the evidence was sufficient to go to the jury.

The judgment in favor of the defendant is reversed and the cause is remanded for a new trial in accordance with the foregoing.

GORDON FARLEY, Superior Court Judge, concurs.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge GORDON FARLEY was called to sit in his stead and participate in the determination of this decision.

MOLLOY, Judge (dissenting).

The writer finds himself mildly in disagreement with the majority opinion, as to the result reached, but firmly in disagreement as to the reasoning used to reach that result.

The majority opinion overstates the evidence in favor of upsetting the decision below. The evidence as to the total use made of this toy by the two Bailey children is vaporous at best. It was first used by the younger child, Ricky, eight years of age, and the only testimony delineating the extent of this use is as follows:

"Q For how long did he play with it?

"A [The plaintiff's mother] *Not very long, I'm not sure how long.*

"Q *Did you see him play with it?*

"A *No,* they were in the house and I told them that they couldn't use it in the house.

"Q Where did they play with it instead, then?

"A He had taken it outside and tried it a couple of times, then, he came back in. *This was earlier.*

"Q And, then, who took the Pogo Stick?

"A David took it outside and played with it." (Emphasis added)

The testimony then indicates that David, the older child of ten, played with the Pogo stick in the accompaniment of another child of about the same age. The mother testified that "* * * it wasn't very long" after David took the toy that the injury occurred. There is no testimony that the toy was not used by anyone else other than the two Bailey children. There is no testimony that any portion of the toy failed or broke—only *that it came apart.* And there is no testimony as to what caused it to come apart.

There are few mechanical assemblages which will frustrate the disassemble genius of a small boy. Unless we take judicial notice that a safe toy for a ninety pound boy cannot be manufactured and sold at retail for $2.99 (the amount paid by the Baileys for this Pogo stick), we have little to go on here. Though I consider the question a close one, I believe the paucity

of the facts developed in the trial court place this case in the category of decisions such as Jakubowski v. Minnesota Mining and Manufacturing, 42 N.J. 177, 199 A.2d 826 (1964), and Shramek v. General Motors Corp., 69 Ill.App.2d 72, 216 N.E.2d 244 (1966). Whatever the test of liability be, whether negligence, breach of warranty or strict liability, there must be evidence which creates a reasonably probable inference that there was a defect of some kind in the product at the time it left the seller's hands.

However, admittedly, it is a close question in this case as to the sufficiency of the proof. Under not too dissimilar situations, courts have permitted the question of whether an accident had been caused by a defect in the product to go to a jury. See Davidson v. Wee, 93 Ariz. 191, 379 P.2d 744 (1963); Canadian Fire Insurance Co. v. Wild, 81 Ariz. 252, 304 P.2d 390 (1956); Fraley v. Ford, 81 Ariz. 268, 304 P.2d 1068 (1957); and, Zesch v. Abrasive Co. of Philadelphia, 353 Mo. 558, 183 S.W.2d 140, 156 A.L.R. 469 (1944). But if the trial court must be reversed, I do not believe that the doctrine of strict tort liability is an appropriate one to reach this result in this case. If we do so, we are going outside any contentions presented by the plaintiff to the trial court to justify recovery, and this we have said we would not do. Schwamm v. Superior Court in and for County of Pima, 4 Ariz.App. 480, 421 P.2d 913 (1966); and see 5 Am.Jur.2d Appeal and Error §§ 545, 546, pp. 29–32; 5 C.J.S. Appeal & Error § 1503, p. 872.

There are a total of ten counts to the plaintiff's complaint filed below, but none of these suggests that the defendant should be held liable on a theory of strict tort liability. The appellant's opening brief in *this* court makes no suggestion that a concept of strict liability should be used to upset the judgment below. It is only when we come to the defendant's brief that we have any such theory mentioned, and then it is only for the purpose of pointing out that *even* under the doctrine of strict lia-

bility there must be a showing that there was a "defect" which resulted in the injury.

It is my view that the decision of whether to adopt the doctrine of "strict liability" as the law of this state should await a case which is properly briefed and in which there is some necessity to "cross the Rubicon." Here, there is no such necessity. If this Pogo stick was unsuitable for a child of less than ninety pounds when it was sold, there is evidence to let the question of liability go to the jury under contentions advanced by the plaintiff. These include theories of express and implied warranty.

The evidence establishes that the plaintiff's mother ordered this Pogo stick through a catalog of the defendant, which catalog advertised this toy as being: "SPECIAL STEEL POGO STICK FOR CHILDREN WEIGHING UP TO NINETY LBS." If this implied statement of suitability induced the plaintiff's mother to make this purchase, then I would find an express warranty under A.R.S. § 44–212:

> "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

Decisions finding an express warranty on no more than this are: Pritchard v. Liggett & Myers Tobacco Company, 350 F.2d 479 (3d Cir. 1965), cert. den. 382 U.S. 987, 86 S.Ct. 549, 15 L.Ed.2d 475 (1966); Norton v. Lindsay, 350 F.2d 46 (10th Cir. 1965); Burr v. Sherwin Williams Co., 42 Cal.2d 682, 268 P.2d 1041 (1954); Lane v. C. A. Swanson & Sons, 130 Cal.App.2d 210, 278 P.2d 723 (1955); Gherna v. Ford Motor Company, 246 A.C.A. 721, 55 Cal.Rptr. 94 (1966); and see Young v. Aeroil Products Company, 248 F.2d 185 (9th Cir. 1957).

And if this Pogo stick did fall apart soon after its purchase by reason of normal use by a child under ninety pounds, there would be a breach of an implied warranty of merchantability. In Colvin v. Superior Equipment Company, 96 Ariz. 113, 118, 392 P.2d 778 (1964), our Supreme Court held:

"There is in every sales contract, however, an implied warranty provided for by A.R.S. § 44–215(1) * * *." 96 Ariz. at 118, 392 P.2d at 781.

The implied warranty referred to in *Colvin* is one that the goods are reasonably fit for the purposes intended. In the instant action the implied warranty would probably more accurately be designated as one of "merchantable quality" under subsection 2 of A.R.S. § 44–215, inasmuch as the buyer's particular use was equivalent to nothing more than the general purpose for which the article in question was manufactured. See Davidson v. Wee, 93 Ariz. 191, 196, 379 P.2d 744 (1963), for an excellent discussion of the difference between an implied warranty of fitness and one of merchantability.

The defense of lack of privity of contract is not raised by the defendant here. This concept, which has given rise to "utterly preposterous decisions" (quote from Prosser—The Assault Upon the Citadel, 69 Yale L.J. 1099, at 1118), if raised, should be rejected as in Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); in Greenberg v. Lorenz, 9 N.Y.2d 195, 213 N.Y.S.2d 39, 173 N.E.2d 773 (1961); in McBurnette v. Playground Equipment Corporation, 137 So. 2d 563 (Fla.1962); and in Lindroth v. Walgreen Co., 329 Ill.App. 105, 67 N.E.2d 595 (1946); and see Frumer & Friedman, Products Liability § 19.01[3].

If we must consider the doctrine of strict liability, as I think we should *not* for the reasons stated, then a few comments as to the desirability of this "leap forward" are appropriate. Dissatisfaction with the privity doctrine and the "outrageous" decisions reached in blindly following this doctrine should not in my judgment induce the court to sweepingly set aside the doctrine of liability based on fault.

Before suggesting a few reasons why this change may not be either good law or in the public interest, we should first consider how far we have already gone in this direction in this state. It has been said that we have already taken this step:

"In the recent case of Colvin v. Superior Equipment Company, 96 Ariz. 113, 392 P.2d 778 (1964), this Court adopted the modern legal concept of a manufacturer's strict liability in tort with regard to its manufactured products." Concurring opinion of Chief Justice Lockwood in Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 287, 399 P.2d 681, 686 (1965).

Respectfully, the writer suggests that this simply cannot be so. In the first place, *Colvin* and *Nalbandian* were concerned with whether a sales contract was to be enforced and not with consequential damages to person or property resulting from a dangerous defect. In *Colvin,* the plaintiff was suing to recover a deficiency judgment after a repossession sale of a power shovel under a conditional sales contract under A.R.S. § 44–322. *Nalbandian* was a suit by a buyer to recover the cost of repairing a pump, the breakdown in the pump having occurred during the period of an express warranty.

Strict liability in tort is imposed for reasons of public policy which have no pertinency to problems such as these. Seely v. White Motor Company, 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965); Price v. Gatlin & Columbian Tractor & Imp. Co., 241 Or. 315, 405 P.2d 502 (1965); contra, Santor v. A and M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965). And certainly the majority of the court in *Colvin* and *Nalbandian* did not conceive that there was a problem at hand to be solved under the doctrine of strict liability in tort. Both *Colvin* and *Nalbandian* are replete with references to and quotations from our Sales Act, A.R.S. § 44–201 et seq., and cases

pertaining to express and implied warranties. Most of the discussion in both *Colvin* and *Nalbandian* would have been completely beside the point if strict liability in tort had been the rationale of the decision.

The antipathy between the reasoning of *Colvin* and the doctrine of strict liability in tort can be pointed up by remembering that *Colvin* gave as one of its reasons for *affirming* the trial court (in *denying recovery* to the *buyer)*, the possibility that the trial court may have found that the buyer did not give notice of the defect to the seller within a reasonable time after discovery thereof. (96 Ariz. at 120, 392 P.2d 778.) If strict liability in tort were the test, this defense has no pertinency:

> "Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act."

Restatement (Second), Torts § 402(A), p. 356.

But, though our Supreme Court has not as yet wedded this new doctrine, it has certainly at least paid ardent courtship. The citation with approval in Colvin of Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962), might even be considered a betrothment. That the engagement has not as yet been broken is demonstrated by the remarks in Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (1967), and the citation therein of the concurring opinion in *Nalbandian*. But before this romance has reached the let-no-man-put-asunder stage, the writer would hope that the Supreme Court will take one

last critical look which will include some of the less appealing facets of this beguiling new doctrine.

Unquestionably, one of the principal attractions of the "new look" is its apparent simplicity. "Confusing" concepts such as privity are swept aside to do "justice." "Strict liability in tort" has the ring of something sure and firm, with implications that a great morass of unnecessary quibbling over details of liability will be cut through. Analysis of the new rule, however, may lead one to conclude that it presents about as much to litigate over as the old rule. The burden of proof upon the plaintiff in a strict liability in tort action against a manufacturer, for instance, is very close to being the same as that in either a negligence or a warranty case.[1]

According to the Restatement (Second), Torts § 402(A), the plaintiff must prove that a product was " * * * in a defective condition *unreasonably* dangerous * * *" (emphasis added) at the time it left the seller's hands. Though this is not an identical twin to the test of what is negligence as far as a manufacturer is concerned, it is certainly a first cousin.[2]

Pragmatically, it will be the wholesaler and the retailer who will feel the bite of the new doctrine. As to the non-negligent distributor, wholesaler, and retailer, the new doctrine is heavy-handed to point of injustice. We are all aware that there is a tendency for business enterprises to become larger and larger and for the small entrepreneur to be squeezed into oblivion between the forces of big business and big labor. The new philosophy of liability with-

---

1. Prosser evaluates the situation as to manufacturers as follows:
   "Where the action is against the manufacturer of the product, an honest estimate might very well be that there is not one case in a hundred in which strict liability would result in recovery where negligence does not."
   69 Yale L.J. The Assault Upon the Citadel (Strict Liability to the Consumer), 1099, at 1114 (1959–60).
   Also see a comparable statement in Hursh, Products Liability, Vol. 1, Supplement § 5A:2, at 144–45.

2. Restatement (Second), Torts § 282, p. 9, defines negligence as follows:
   " * * * conduct which falls below the standard established by law for the protection of others against *unreasonable risk of harm.*"
   (Emphasis added)
   And see § 395, Restatement (Second), Torts, p. 325, for the specific standard applicable to manufacturers.

out fault will mean the difference between survival and extinction to many a small businessman.

The new doctrine takes the tranquilizing view that strict liability in tort reaches a just result because it passes back to the manufacturer—where it "really belongs" —the liability for a defective product. This "passing back," of course, will only be possible to the extent that proof is available to trace the defect back and to the extent that the original supplier is financially responsible. If passed back, inexorable laws of economics do not permit the loss to rest with the manufacturer. It will be a rare manufacturer of any size who will make less profit at the end of the year because of the new doctrine. Big manufacturers will pass the loss on to the consumer. Products liability insurance, another tranquilizing thought which has appealed to some of the proponents of this doctrine,[3] is of no real consequence in determining the final debtor in this shifting of losses, as the cost of the liability insurance must in turn pay a profit in the insurance company, all of which must be paid in the final analysis by the consumer.

And some will not have the economic wherewithal or the good luck to be able to pass the loss along. Prosser himself comments upon this unfortunate aspect of the new concept in words pertaining to the small manufacturer, but which have equal pertinency to the small middleman and retailer:

"It is a common failing to overlook the problem of the small manufacturer. When social reformers speak of 'manufacturers' they generally assume that all manufacturers are in the position of U. S. Steel Corporation or General Motors or Standard Oil Company of New Jersey. It may very well be (leaving out considerations of justice) that large organizations of this character can absorb

or distribute an item of increased cost such as that which would result from the imposition of strict liability. But many manufacturers are in a totally different situation. Their position in the industry is vulnerable and their competitive situation delicate. It is these comparatively small manufacturers who suffer when additional costs are added without regard to their situation."

69 Yale L.J. The Assault Upon the Citadel (Strict Liability to the Consumer) 1099, at 1121–22, n. 147 (1959–60).

Under the strict liability concept, neither contributory negligence (Comment *n* of Restatement (Second), Torts § 402(A)) nor contract limiting liability (Comment *m* of Restatement (Second), Torts § 402 (A)) are to detract from full recovery. Under this doctrine, then, the negligent consumer, and the consumer who has deliberately limited his right to recovery by solemn contract, are to recover their losses from all other consumers, non-negligent and contractually unencumbered as they may be. In the process of passing these losses along, there will be substantial wastage in the costs of litigation and by reason of the small entrepreneurs who will fall by the wayside, thus frustrating this equalizing process from full achievement.

The argument favoring abrogation of the traditional law, to the effect that the manufacturer is too often out of the jurisdiction of the only court available to the injured consumer,[4] no longer has efficacy in the light of "long arm statutes" such as our own Rule 4(e), Rules of Civil Procedure, 16 A.R.S. See Phillips v. Anchor Hocking Glass Corporation, 100 Ariz. 251, 413 P.2d 732 (1966). This Rule permits the passing back of the loss without the impalement of the innocent middleman on the sword of liability.

By accepting the strict liability in tort doctrine, this state will be leapfrogging over

---

3. I.e., Justice Traynor as expressed in his memorable concurring opinion in Escola v. Coca Cola Bottling Co. of Fresno, 24 Cal.2d 453, 462, 150 P.2d 436, 440 (1944).

4. I.e., Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, at 1116 (1959–60).

the question of whether contributory negligence is a defense in an implied warranty case.[5] The only contributory negligence defense permitted by § 402(A), Restatement (Second), Torts, is that usually denominated assumption of risk. Negligence in the failure to discover a defect is no defense. See Comment *n*, § 402(A) Restatement (Second), Torts, p. 356. On those occasions when our legislature has passed upon the related problem of whether failure to discover a defective condition should be a defense in a warranty case, it has spoken in favor of denying recovery, under certain circumstances, to the buyer who negligently fails to inspect and discover a defect. See A.R.S. §§ 44–215, subsec. 3 and 44–2333, subsec. C, par. 2, of the newly adopted Uniform Commercial Code.

The grand simplicity of the new doctrine —its sweeping aside of the concept of liability through fault—is its most dangerous aspect. The all-inclusive ring of "strict liability" will cause an overextension (as here) of what is conceived by its progenitors to be a limited concept. Unlike its predecessor-doctrine of liability through "fault," which in the very statement of the principle suggests that the shifting of loss is to be the exception rather than the rule, the innuendos of the new verbiage are pervasive. The supplier-consumer relationship is the most ubiquitous in our society, not even excepting the sexual relationship. A concept that contemplates equalizing most of the accidental loss arising from the consumption of goods demands a vast conveyer belt of judicial machinery to redistribute losses. One might pause to reflect whether a conveyer belt rolling on wheels provided by an adversary system, which expends so much energy in friction

heat, will be sufficiently efficient to meet the demands of this brave new world.

A doctrine of liability without fault, while it may eliminate some of the inconsistencies presented by rules of "privity," will create its own inconsistencies, which will in turn require a sweeping away of other concepts. An example of such is presented in Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963). In that action, the Court of Appeals of New York held that Lockheed, the assembler of an airplane, was to be held liable to the estate of a passenger killed in a crash of that airplane under a principle of strict liability arising from implied warranty, but denied any recovery against Kollsman, the manufacturer of the altimeter which malfunctioned to cause the accident. The court gives no reason for making such a distinction other than that "adequate protection" is provided to the passengers by stopping liability with the airplane manufacturer (240 N.Y.S.2d 592, 191 N.E.2d at 83). Presumably, if the airplane manufacturer had been bankrupt, the manufacturer of the component part would have been held liable.

As pointed out in the dissenting opinion in *Goldberg,* there seems no logic in holding American Airlines, which contracted directly with the passenger, to a lower standard of liability (in the field of negligence) than the assembler of the aircraft (in warranty), with whom the passenger had no dealings whatsoever. If the new doctrine comes to stay, sooner or later it will embrace within its euphoria the liability of all common carriers. And there are only two short steps from there to impose liability on all owners and operators of motor vehicles, first as to passengers and then as to all others. And those whose sense of social justice prompts them to seek an equaliza-

---

5. There is a raging conflict on this legal issue. There is substantial authority negating the defense: Hansen v. Firestone fTire and Rubber Company, 276 F.2d 254 (6th Cir. 1960); Brown v. Chapman, 304 F.2d 149 (9th Cir. 1962); 77 C.J.S. Sales § 357, p. 1266 (but see below); but for a contrary view see Dallison v. Sears, Roebuck and Co., 313 F.2d 343 (10th Cir. 1962); Gardner v. Coca Cola Bottling Company of Minnesota, 267 Minn. 505, 127 N.W.2d 557 (1964); 77 C.J. S. Sales § 383, p. 1335. Also see 4 A.L.R.3d 501 for a topical analysis.

tion of all accidental losses will hardly cease storming the battlements with only these outer walls taken.

Surely there are many solutions more fitting than the one proselyted.[6] If the result reached in some fact situations under the common law of negligence and warranty, as it has been developed and specialized over many generations, is unsatisfactory, the writer suggests that these time-proven concepts be tailored as needed in order to eliminate the injustices perceived rather than to relegate the old concepts to the junkheap. A salutary step in this regard might be to discard the doctrine of privity in the law of negligence. The injection of this contractual concept into the law of torts by Winterbottom v. Wright, M.W. 109, 152 Eng.Rep. 402 (Exch. 1842), has few defenders today. The *Palsgraf* test[7] of reasonable foreseeability may be enough of a limit of liability in this as in all other cases of negligence.

The new approach is Einsteinian in its simplicity, and like Einstein's theories of relativity, may command more awe than understanding. The new approach attempts to explain all recoveries ever had against a seller of goods. It does explain most, but it fails to explain decisions which are accepted as "fair" which have denied recov-

ery. We are not in the science of physics but in the field which is neither a science nor an art. Clarence Darrow is attributed with saying, "Laws should be like clothes. They should be made to fit the people they are meant to serve."[8] For the judiciary to adopt a sweeping principle of strict liability for all sellers, whether big or little, of all chattels, whether new or used, whether unfabricated or works of art, and whether sold with implied warranties or sold "as is," is to hack out a suit of clothes with a woodsman's ax, though it must be acknowledged, to make the analogy more appropriate, that the ax is finely honed and has several buttonhole notches tooled into its cutting edge.

Would it not be preferable to leave this particular tailoring to the legislative branch of our government? Those of us whose training and experience has been largely confined to the law have a limited view of the broad scene. Each discipline is inclined to have prejudices arising from the fact that it views life from its own peephole. On something as far-reaching as this, the viewpoint of a branch of our government containing more of a cross section of our people should give a closer approximation of what will suit our society as fair and just in the years ahead.

This judgment should be affirmed.

6. The word "proselyted" is justified. Though the Restatement is said to be a compendium of the common law as it currently exists in this country, Honnold, The Life of the Law, pp. 144, 168, 176–77 (1964), Restatement (Second), Torts, Vol. 1, Introduction, p. VII, at IX (1965), this surely cannot be said of the rule under discussion. In May of 1964, when the new rule was promulgated, California was the only jurisdiction, in Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962), speaking of "strict liability in tort." See Hursh, Products Liability, Vol. 1, Supplement § 5A:1 et seq. Even now, there is probably no jurisdiction which has adopted § 402(A), Restatement (Second), Torts, in all of its ramifications. See 17 U.Fla.L.Rev. Products Liability: Doctrinal Problems and the Restatement's Answer, pp. 421, 444 (1964); and see Condon, Product Lia-

bility Problems, 57 Nw.U.L.Rev. p. 536 (1962), in which the author states:
"No one can quarrel with the right of these scholars to entertain and foster by every appropriate means whatever views they may have as to what the law should be. One can quarrel, however, with a Restatement which does not restate. One can take violent exception to the promulgation by the American Law Institute of a revolutionary concept in the law under a banner which proclaims it to be 'an orderly statement of the general law of the United States'."
Nw.U.L.Rev. Product Liability Problems, Vol. 57, p. 542.

7. Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928).

8. The New Dictionary of Thoughts, New Standard Book Co., p. 342 (1960).